## DAVID SLOAN *vs.* HENRY EDWARDS.

*Assault and battery—Pleading—Special damage—Evidence— Pecuniary circumstances—Exemplary or Punitive damages— Credibility of witness—Character—General reputation—Impeachment of witness—Mental pain or Suffering as an Element of Damage—Measure of Damages.*

In an action in damages for an assault and battery, it is competent for the plaintiff to offer in evidence, and for the jury to consider the fact, that as a result of the battery alleged the plaintiff had

Sloan *vs.* Edwards.

become subject to convulsions or fits, although such fact was not specially alleged in the declaration as a ground of special damage.

Whatever injurious consequences result naturally from the wrongful act done, become elements of damage; and it is not necessary that the particular form or nature of the results should have been contemplated or foreseen by the wrong-doer.

The pecuniary circumstances of the plaintiff, and the extent and dependent condition of his family, may be considered by the jury in estimating the damages to be awarded the plaintiff, for the injury suffered by him.

In cases of personal wrongs, if the injury has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not restricted to actual or compensatory damages, but may give, in addition thereto, such exemplary or punitive damages as the circumstances of the case will warrant. And, in such cases, the pecuniary circumstances of the defendant are proper to be considered.

But the testimony of a witness as to the pecuniary condition of the defendant should not be allowed to go to the jury, when it does not appear that he spoke from personal knowledge of his own, or that his information was derived from any competent or proper source ; nor when the answer of the witness conveyed no definite idea of the extent of the defendant's means.

It is incompetent for a witness called to support the credibility of another, to testify that he would believe him on his oath, having previously testified that he had lived in the same neighborhood with him for some years and had never heard his character for truth discussed or talked about except by one person.

A witness called to prove character, either good or bad, should be interrogated as to his means of knowledge of the general reputation of the person in question among his neighbors,'and what that reputation is. And the evidence must be confined to general reputation.

Where a witness is impeached by proof of a general bad reputation for truth, the fact of the existence of such general reputation may be negatived, by a witness having equal means and opportunity of knowledge as the impeaching witness.

A witness cannot be cross-examined as to any fact, which, if admitted, would be wholly collateral, and irrelevant to the matters in issue,

Sloan *vs.* Edwards.

for the purpose of contradicting him by other evidence, and in this manner to discredit his testimony. And if the witness answer such an irrelevant question without objection, evidence cannot afterwards be admitted to contradict his testimony on the collateral matter.

A witness, however, may be asked any question on cross-examination which, if answered in the affirmative, would qualify or contradict some previous part of his testimony relevant to the issue on trial; and if such question be put and answered in the negative, the witness may then be contradicted as to such matter. But if a witness has simply testified to a fact, his previous *opinion* as to the merits of the cause, cannot be regarded as relevant to the issue.

In an action for assault and battery the jury may consider the malice of the defendant, the insulting character of his conduct, the rank and position in life of the several parties, and all the circumstances of the wrong, and thereupon award such damages as the circumstances of the case require.

Where mental pain or suffering is connected with, and follows as a natural consequence of, a material wrong or injury, it is a legitimate element of damage.

In an action for an assault and battery the jury are not confined in the assessment of damages to the consideration of the consequences of the injury that have ensued to the time of the trial, but they may award damages for the natural injurious consequences that may continue or ensue after the trial.

APPEAL from the Circuit Court for Montgomery County.

The case is stated in the opinion of the Court.

*First, third, seventh* and *eighth exceptions* stated in the opinion of the Court.

*Second Exception.*—The plaintiff having stated that he had no means, except from his own labor, was asked by his counsel, what family he had dependent on him for support, to which question the defendant objected, but the Court (LYNCH and VINSON, J.,) overruled the objection and permitted the question to be asked. The defendant excepted.

*Fourth Exception.*—The plaintiff having rested, the defendant was called as a witness in his own behalf, and testified to the meeting between himself and the plaintiff, on the 19th day of June, 1881, and stated that he had approached the plaintiff on that morning, to demand an explanation of a publication which Edwards, (who was one of the firm of Edwards & Co.,) had caused to be published the day before in the newspaper printed at Lonaconing, where both parties then lived, which publication had greatly incensed and insulted the defendant, who was a member of the firm of D. R. Sloan & Co., and which publication was offered in evidence without objection, and is as follows:

"What difference would it make to D. R. Sloan & Co. if Edwards & Co. has borrowed money; would they pay it? We have enough to do to attend to our own business, and if D. R. S. & Co. would do the same, they would, perhaps, be a little more respected.          EDWARDS & Co.

"Lonaconing, Md., June 1, 1881."

The defendant then testified that he had not struck the plaintiff, but that after plaintiff had refused to give him any explanation, and had applied an abusive epithet to him, and raised his arm as if to strike defendant; he, the defendant, struck at plaintiff, but missed him, and that defendant then walked about eighteen or twenty feet, and lay down, and that then defendant walked away. The defendant's counsel then offered to ask him the following question: "Did you, or not, at the time this card appeared in the newspaper, know of any cause or reason for its publication?" to which question the plaintiff objected, and the Court sustained said objection, and refused to allow said question to be asked. The defendant excepted.

*Fifth Exception.*—The defendant being still on the witness stand, his counsel offered to ask him the following question, viz., "At the time of this meeting between you and the plaintiff, had you, or not, any knowledge or in-

formation, except from the card itself, as to what it referred to, or meant?" to which question the plaintiff objected, and the Court sustained the objection, and refused to permit such question to be asked. The defendant excepted.

*Sixth Exception.*—The defendant then called Dr. J. W. Williams, and amongst other things, offered to prove by him that on an occasion shortly before the encounter between plaintiff and defendant, he had seen the plaintiff have a fight or difficulty of some kind, with a party by the name of Hannon, and that on that occasion plaintiff had defiantly and publicly boasted of his strength and physical power, and of his skill as a pugilist; and offered to follow this up by proving that it had been communicated to the defendant before the encounter; but the plaintiff objected to said testimony, and the Court sustained the objection, and refused to permit it to be given to the jury. The defendant excepted.

*Ninth Exception.*—The plaintiff offered the four following prayers:

1. That if the jury believe from the evidence in the cause, that the defendant struck and beat the plaintiff and inflicted the injury upon him as detailed by the witnesses upon the stand produced for plaintiff, then in assessing their damages, they are to take into consideration the bodily suffering and pain of the plaintiff, his diminishing capacity to work and probable loss of health, his loss of time from the date of the assault until his restoration to health; if the jury find those facts to exist, his medical and other expenses, and they may take also into consideration the condition in life and pecuniary circumstances of the defendant.

2. That if the jury find from the evidence in the cause that the defendant inflicted the alleged injury upon the plaintiff, then, in estimating the damages, they are to consider not only the injury the plaintiff has sustained, but

also the damages he is likely to sustain after this trial, as the natural consequence of said injury, and whether said injury is in its nature permanent, and how far it is calculated to disable the plaintiff from engaging in that occupation for which, in the absence of said injury, he would have been qualified, and the physical and mental suffering to which he was subjected by reason of said injury; and that the plaintiff is entitled to a fair and just compensation for the injury which he has thus sustained.

3. That if the jury believe from the evidence in the cause that the plaintiff was injured by the defendant as alleged by the plaintiff, and that the assault and battery was wanton, unprovoked and excessive in its nature, then they can inflict vindictive and punitive damages upon the defendant.

4. That the facts that the card offered in evidence in this cause, was published at the instance, or with the sanction of the plaintiff, and that said card, as published, was seen and read by the defendant, at or about six o'clock, p. m., on the Saturday preceding the Sunday on which the assault is alleged to have been made by the defendant on the plaintiff, do not constitute sufficient provocation for said assault to be considered by the jury in mitigation of damages in this cause.

And the defendant offered the twelve prayers following:

1. That if the jury find a verdict for the plaintiff, then, under the pleadings in this case, the damages to be considered by them are of two sorts— compensatory and exemplary—the first being simple compensation for such injury as has been actually sustained by the plaintiff at the hands of the defendant on the occasion mentioned in the declaration, if any, and the second, such as may serve as an example to others, and to further instruct the jury that they cannot award any exemplary damages unless they shall find, from the evidence,

that the defendant acted with malicious motives and intention, or under circumstances of outrage and wanton violence, nor can the jury award exemplary damages unless they find that there has been some injury sustained as aforesaid.

2. That if the jury find from the evidence that a collision occurred between the plaintiff and defendant, at the time mentioned in the declaration, but that the defendant inflicted no physical or bodily injury upon the plaintiff, then the jury are not to hold defendant responsible in damages for such injury, if any, as they may believe the plaintiff suffered by reason of fright, anger or any similar mental or nervous condition, on the occasion mentioned in the declaration.

3. That in estimating the damages in this case, if the jury find a verdict for the plaintiff, the possible or probable loss of a situation or appointment which they may believe the plaintiff now holds, is a damage too remote to be considered by them in making up their verdict.

4. That the jury are entitled to look into all the facts and circumstances disclosed by the evidence, and at the conduct of both parties, and see where the blame is, and to determine whether any damages are due according to the way the parties conducted themselves on the occasion mentioned in the declaration.

5. That the burden of proof is on the plaintiff to make out his case, and to prove to their satisfaction by a preponderance of evidence that an assault was committed as charged in the declaration, and that the plaintiff sustained such damage thereby, as to entitle him to a verdict in his favor.

6. That under the pleadings in this case the plaintiff cannot recover damages for loss of time, if any, occasioned by the injury complained of, even if the jury find a verdict for the plaintiff.

7. That under the pleadings and evidence in this case, if the jury find a verdict for the plaintiff, they are not at

liberty in estimating the damages, to take into consideration any injury done by the defendant to the plaintiff, except such as they may find from the evidence to consist of the actual striking, bruising and wounding of the plaintiff by the blows actually struck by the defendant, if any, and such injury as necessarily resulted from said blows.

8. That under the pleadings in this case, if the jury find a verdict for the plaintiff, they are not at liberty to take into consideration any continuing injury occasioned by the alleged assault, except down to the time of the bringing of this suit.

9. That even if the jury believe, from the evidence, that the defendant, on the 19th day of June, 1881, assaulted and beat the plaintiff, and even if they believe that in said encounter the plaintiff was knocked down and his head injured, and even if the jury further believe that by means of said blow or blows and fall, and the injury received therefrom, the plaintiff was thrown into spasms, fits or convulsions of any nature, still the jury are not at liberty, under the pleadings in this cause, if they find a verdict for the plaintiff, to allow damages to the plaintiff, for or on account of such spasms, fits or convulsions.

10. That even if the jury believe, from the evidence, that the defendant, on the 19th day of June, 1881, assaulted and beat the plaintiff, and that the plaintiff was knocked down in said encounter, and in falling struck his head; and even if they further believe that by means of the blows inflicted by the defendant, or by means of such fall, or both, the plaintiff was so injured as to produce in him the disease of epilepsy, or epileptoid, or any similar disease, still under the pleadings in this cause, the plaintiff cannot recover damages for or on account of the producing of such disease in him.

11. That even if the jury believe, from the evidence, that the defendant, on or about the 19th day of June, 1881, assaulted and beat the plaintiff, and knocked him

down, and that in falling, the plaintiff struck his head, and if they believe that by means of such blow or blows, and fall, or either of them, the plaintiff was so injured as to produce or bring about in him the disease of epilepsy, epileptoid or any similar disease ; and if they further believe that thereby the plaintiff's health was permanently injured, still, under the pleadings in this cause, the plaintiff cannot recover damages for such permanent injury to his health.

12. That if the jury believe, from the evidence in the cause, that the general reputation of the plaintiff for truth and veracity in the community at Lonaconing, (whilst he was a citizen of said town,) was bad, and that such general reputation so continued down to the time he left said town, about the latter part of the year 1881, if the jury so find, and if they believe, from the testimony in the case, that such general reputation of the plaintiff, for truth and veracity, was such that he was not worthy of belief on his oath, then the jury are at liberty to wholly disregard the testimony of said plaintiff; and further that there is no fixed, definite or specific number of witnesses required in law by which to prove that said plaintiff is not worthy of belief on oath.

The Court granted the plaintiff's third prayer, and the second, third, and twelfth prayers of the defendant, his fifth being conceded, and rejected the first, second, and fourth prayers of the plaintiff, and the first, fourth, sixth, seventh, eighth, ninth, tenth, and eleventh prayers of the defendant, and gave also the following instruction of its own :

The Court instruct the jury, that if they find from all the evidence in this cause, that the defendant struck and beat the plaintiff, as alleged in the plaintiff's declaration, then in estimating the damages, they are to consider his health and condition, before the injuries complained of, as compared with his present condition in consequence of the

said injuries, and whether they are, in their nature, permanent, and how far they are calculated to disable him from engaging in those business pursuits for which, in the absence of such injuries, he would have been qualified, and also the physical and mental suffering to which he had been subjected by reason of the said injuries, and they may also consider the condition in life and pecuniary circumstances of the defendant, and to allow the plaintiff such damages, as in the opinion of the jury will be a fair and just compensation for the injuries which he has suffered.

The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before Miller, Yellott, Alvey, Irving, and Ritchie, J.

*William Brace,* for the appellant.

*James B. Henderson,* and *William M. Price,* for the appellee.

Alvey, C. J., delivered the opinion of the Court.

This is an action of trespass for an assault and battery, alleged to have been committed by the defendant upon the plaintiff. The case was tried upon the general issue plea of not guilty. The declaration charges, that the defendant assaulted, and then and there beat, bruised, wounded, and ill treated the plaintiff, insomuch that his life was thereby greatly despaired of, and other wrongs did, to the great damage, &c.

At the trial several bills of exception were taken by the defendant to the rulings of the Court on questions as to the admissibility of evidence, and one to the granting of prayers on behalf of the plaintiff, and to the refusal of prayers on the part of the defendant. These exceptions present the questions to be decided on this appeal.

1. The first exception as to the admissibility of evidence, and the ninth, tenth and eleventh prayers offered by the defendant, and which were rejected by the Court, present substantially the same question; and that question is, whether, under the declaration in this case, it was competent to the plaintiff to give in evidence, and for the jury to consider, the fact that, as a result of the battery alleged, the plaintiff had become subject to convulsions or fits?

It is contended by the defendant that, in order to make such evidence admissible, the fact ought to have been specially alleged in the declaration as ground of special damage. But we are not of that opinion.

It is a well settled principle that the damages recoverable in actions for personal injuries must be the *natural and proximate consequence* of the act complained of. Therefore, whatever injurious consequences result naturally from the wrongful act done, become elements of damage, and it is not necessary that the particular form or nature of the results should have been contemplated or foreseen by the wrong-doer. It is said, on what would appear to be ample authority, that the natural results of a wrongful act are understood to include all damage to the plaintiff of which such act was the efficient cause, though, in point of time the damage did not occur until some time after the act done. 2 *Greenl. Ev.*, sec. 268 *a*. Whenever, therefore, a wrongful act is charged, the plaintiff is at liberty to give evidence of all the natural results or consequences of the act, though, as it may be, such results or consequences were not developed or made apparent until some time after the act done. And it has been held by this Court, that the general rule is, that it is not necessary to state specially any matters which are the *legal* and *natural* consequences of the battery; nor are the jury confined to the mere corporal injury which the plaintiff has sustained. *Gaither vs. Blowers*, 11 *Md.*, 552; 2 *Greenl. Ev.*, sec. 89. In the case of *Tyson vs. Booth*, 100 *Mass.*, 258, it was held, that

the plaintiff might show specific direct effects of the wrongful act complained of, without specially alleging them in the declaration. That was an action for an assault and battery, and the plaintiff, without specially alleging such an element of damage in his declaration, was allowed to prove, for the purpose of enhancing the damages, that he became subject to fits as a result of the assault. It is in fact only a means of showing the nature and extent of the injury inflicted on the plaintiff, by the beating and wounding alleged in the declaration. Of course, it was for the jury to determine whether the fits or spasms resulted from the assault and battery complained of; and it was only in the event of finding in the affirmative, that such consequences could be considered in estimating the damages. We think, therefore, the Court below was quite right in receiving the evidence stated in the first bill of exception, and in rejecting the ninth, tenth, and eleventh prayers.

2. As to the second and third bills of exception, the questions thereby presented may be considered together. It would seem to be settled, in this State at least, that the pecuniary circumstances of the plaintiff, and the extent and dependent condition of his family, are circumstances that may be taken into consideration by the jury, in estimating the damages to be awarded the plaintiff, for the injury suffered by him. This was expressly ruled in the case of *Gaither vs. Blowers*, 11 *Md.*, 536, and we discover no sufficient reason for departing from the ruling there made. And it was held in the same case that the pecuniary circumstances of the defendant could be given in evidence to the jury, to be considered by them in awarding exemplary damages. In all cases of personal wrongs, the general rule is, if the injury has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not restricted to actual or compensatory damages, but may give, in addition thereto, such exemplary or punitive damages as the circumstances of

Sloan *vs.* Edwards.

the case will warrant. And, in such cases, the pecuniary circumstances of the defendant are proper to be considered. An amount that might be extremely punitive and severe to a defendant of small or moderate means, would be light and trivial to a defendant of very much larger means; and hence the pecuniary circumstances of the defendant are proper to be considered in estimating the damages. *Meibus vs. Dodge*, 38 *Wis.*, 300. But while the Court below was right in admitting the evidence stated in the second bill of exception, we are of opinion that the evidence allowed to go to the jury, as stated in the third exception, was too general and indefinite. The witness was asked the question, "What is the pecuniary condition of the defendant?" to which he replied, "that it was generally considered good." It does not appear that the witness spoke from any personal knowledge of his own upon the subject, nor does it appear that his information was derived from any competent or proper source. Indeed, the answer of the witness conveyed no idea of the extent of the defendant's means. The jury were left to speculate as to the extent of the defendant's wealth, and that ought not to be allowed in such cases.

3. The evidence offered by the defendant, as set forth in his fourth and fifth bills of exception, and rejected by the Court, was clearly not admissible, and the Court committed no error in rejecting it. That the defendant was without knowledge to what the published card referred, except as informed by the card itself, furnished no sort of excuse for his seeking the plaintiff in the street and making an attack upon him. If he wanted an explanation there were certainly more appropriate methods of obtaining it than the one adopted. Nor was there the slightest error in rejecting the proffered evidence stated in the sixth bill of exception. For though it be true that the plaintiff was an able bodied man, and a pugilist, to the knowledge of the defendant, those facts were quite immaterial, under the

circumstances of this case. Such facts furnished no justification or provocation for the attack on the plaintiff in the street, when it is admitted that he was pursuing his lawful business, and was in no manner seeking a conflict with the defendant.

4. The seventh exception presents a question of a different character. The plaintiff having been examined as a witness in his own behalf, the defendant offered evidence to impeach the credibility of the plaintiff's testimony, by proving that his character for truth and veracity was bad, and such as to render him unworthy of belief on oath. The plaintiff then, to support his credibilty, called a witness who testified that he lived in the neighborhood of the plaintiff, and had so lived for some years; that he knew the plaintiff, and that he had never heard his character for truth discussed or talked about, except by one person; he thought that if there was any general talk there about the plaintiff's character for truth, he would have heard of it. Whereupon the plaintiff proposed to ask the witness the general question, whether he knew the plaintiff's *general reputation* for truth in the community, and whether he would believe the plaintiff on oath; to which the defendant objected, but the objection was overruled, and the witness allowed to answer, which he did by saying, that he had never heard the plaintiff's general reputation for truth questioned, and that he would believe him on oath.

Such mode of examination was certainly a departure from what has been the long established practice in this State. It is manifest the witness was not speaking of any knowledge he had of the existence of any *general reputation* of the plaintiff for truth, whether good or bad, but simply of an inference drawn by himself from the negative fact that he had never heard the plaintiff's character discussed. That certainly was not proof of *general reputation*, and much less was it a sufficient foundation for testifying to an opinion that the impeached witness was entitled to credit on oath.

The long settled practice, both in England and in this State, though departed from to some extent in a few of the States in this country, requires that the witness called to prove character, either good or bad, should be interrogated as to his means of knowledge of the *general reputation* of the person in question among his neighbors, and what that reputation is. The evidence must be confined to *general reputation*, and the very form of the question assumes and implies that such general reputation must be known and proved as an affirmative fact, and not as an inference from a mere absence of common repute. *Knight vs. House*, 29 *Md.*, 194, 199; *Vernon vs. Tucker*, 30 *Md.*, 456. As laid down in 1 *Greenl. Ev.*, sec. 461, the witness "must be able to state what is *generally said* of the person by those amongst whom he dwells, or with whom he is chiefly conversant, for it is this only that constitutes the general reputation or character." This principle was fully adopted by this Court, in the case of *Vernon vs. Tucker*, just referred to; and it is supported by all the text writers upon the subject. *Taylor*, in his work on *Evidence, sec.* 1324, says, "The regular mode of examining into the character of the person in question, is to ask the witness whether he knows his *general reputation* among his neighbors,—what that reputation is,—and whether, from such knowledge, he would believe him upon his oath." The same formula, in effect, is given in *Swift on Ev.*, 143; 1 *Phill. Ev.*, 432, and in 1 *Greenl. Ev.*, sec. 461. The subject is fully examined in *Wike vs. Lightner*, 11 *Sergt. & R.* 199, 200, and in *Teese, et al. vs. Huntingdon, et al.*, 23 *How.*, 2, 11, where the diversity in some of the American cases is remarked upon by the Court.

But while the witness in this case had not the knowledge requisite to enable him to speak of the general reputation or character of the plaintiff for truth, and was therefore not entitled to say whether he would believe him on oath or not, we think it is quite consistent with the rule

we have stated, that where a witness is impeached by the proof of a general bad reputation for truth, the fact of the existence of such general reputation may be negatived, by a witness having equal means and opportunity of knowledge as the impeaching witness. The witness in negation of the fact of such general reputation may be asked the question, whether he lives in the neighborhood of the party whose character is in question, and what have been his means or opportunities of knowledge, and whether he knows of such general reputation as that proved by the impeaching witness. But unless he has knowledge and can say that the party has a good general reputation for truth and veracity, he cannot say whether or not he would believe the party upon oath; for that would be simply matter of opinion, without any sufficient knowledge upon which to found it, superior to that possessed by the jurors themselves. But in thus allowing proof in negation of the fact of the existence of general reputation, large discretion in the trial Court will be required to be exercised, in order to prevent abuse in the production of witnesses to prove a mere negative, without, it may be, having had the occasion or proper opportunities to learn the character of the witness impeached.

It follows from what we have said, that there was error in the ruling as set out in the seventh exception.

5. And we think there was also error in the ruling in the eighth exception. The witness Cunningham, on the part of the defendant, proved that he was not present at the rencounter between the plaintiff and defendant, but that he arrived immediately thereafter, and found the plaintiff on the ground, and that he carefully examined the plaintiff's face and found no marks or bruises on it. The witness was then asked, on cross-examination, whether he had not gone to the plaintiff's store some time after the occurrence, and there stated to the plaintiff that the assault upon him was a great outrage, and that he would

be foolish if he did not make the defendant smart for it. The witness replied that he had made no such statement, though he might have been at the plaintiff's store about a week after the occurrence. The plaintiff then, for the purpose of contradicting the witness, proposed to testify, and was allowed, against the objection of the defendant, to state that the witness had come to his store about a week after the occurrence, and after he, the plaintiff, *had explained* the occurrence to the witness, he said that it was a great outrage, and that the plaintiff should make the defendant smart for it.

It is true, the credit of a witness may be impeached by proof that he has made statements out of Court, inconsistent with his testimony given in Court. But it is a general rule that a witness cannot be cross-examined as to any fact, which, if admitted, would be wholly collateral, and irrelevant to the matters in issue, for the purpose of contradicting him by other evidence, and in this manner to discredit his testimony. And if the witness answer such an irrelevant question without objection, evidence cannot afterwards be admitted to contradict his testimony on the collateral matter. 2 *Phill. Ev. (6th Am. Ed.)* 398; *Goodhand vs. Benton,* 6 *G. & J.,* 481; *Att'y Gen'l vs. Hitchcock,* 1 *Exch.,* 91, 101. A witness, however, may be asked any question on cross-examination, which, if answered in the affirmative, would qualify or contradict some previous part of his testimony relevant to the issue on trial; and if such question be put, and answered in the negative, the witness may then be contradicted as to such matter. 2 *Taylor Ev.,* sec. 1300. But it would seem to be well established, that if a witness has simply testified to a fact, his previous *opinion* as to the merits of the cause, cannot be regarded as relevant to the issue. 1 *Greenl. Ev.,* sec. 449; 2 *Taylor Ev.,* sec. 1300.

Here the witness had simply testified to having seen the plaintiff very soon after the rencounter in the street of

Frostburg, and that he examined his face and discovered no marks or bruises. Now, assuming that the subsequent statement imputed to the witness was in fact made by him, it had nothing in it to conflict with his previous testimony. After having the occurrence explained to him by the plaintiff himself, he characterized it in strong terms; but that was his mere opinion upon the facts as related by the plaintiff. There was no reference whatever made to the facts testified to in chief by the witness, and there was no contradictory statement made in regard to those facts; and the most that can be made of the statement is, that it was a strong expression of opinion as to the conduct of the defendant in making the assault, and not as to the nature and extent of any wounds received by the plaintiff. All this was clearly inadmissible, and should have been rejected.

6. The instruction granted by the Court in lieu of the plaintiff's first and second prayers, when read in connection with the plaintiff's third prayer, which was granted, very fully and fairly instructed the jury upon the whole case. The jury were not confined to the mere corporal injury which the plaintiff may have sustained; but they were at liberty, and the Court was right in so instructing them, to consider the malice of the defendant, the insulting character of his conduct, the rank and position in life of the several parties, and all the circumstances of the wrong, and thereupon to award such damages as the circumstances of the case required. *Gaither vs. Blowers*, 11 *Md.*, 552; 2 *Greenl. Ev.*, sec. 89. And while it is true, the law cannot value, and does not compensate for mental pain or suffering when the act complained of causes that alone, yet when it is connected with, and follows as a natural consequence of, a material wrong or injury, it is a legitimate element of damage; and the jury were so instructed in this case. And in actions of the character of the present, the jury are not confined in the assessment of damages to the consideration of the consequences of the in-

jury that have ensued to the time of the trial, but they may award damages for the natural injurious consequences that may continue or ensue after the trial; for the reason that no second action can be maintained for such consequences. *Fetter vs. Bell*, 1 *Ld. Raym.*, 339; *Wood's Mayne on Dam.*, 592.

7. Of the twelve prayers offered by the defendant, the Court granted the second, third, fifth, and twelfth; and in the prayers granted we think the defendant was given the full benefit of everything that he could in reason urge before the jury. The first prayer was obnoxious to several objections, but there was one that was sufficient to justify its rejection, and that was, that it was too indefinite, and was calculated to mislead the jury. The jury would have been left to speculate, on the construction of this prayer, as to the nature and extent of the injury "actually sustained," for which they could give damages, or what was meant by the terms employed, of "some injury sustained as aforesaid." They might have concluded that they were confined to mere corporal wounds and bruises, which, as we have shown, would have been misleading. The fourth and sixth prayers were clearly erroneous, and were properly rejected. The first of these was too indefinite, and the second inconsistent with the previous instructions of the Court. The seventh prayer was also clearly erroneous for the same reason that the first of the defendant's prayers was properly rejected. It sought unduly and improperly to restrict the jury in their finding. And for the reasons already given, the eighth prayer was rightly rejected. We entirely agree with the Court below in all its rulings upon the prayers, and as to the instructions granted; but for the errors in the rulings upon the admissibility of evidence, we must reverse the judgment, and award a new trial.

*Judgment reversed, and*
*new trial awarded.*

(Decided 20th December, 1883.)