# THE BALTIMORE CITY PASSENGER RAILWAY COMPANY *vs.* GEORGE BAER.

*Negligence—Probable Consequences of an Injury—Injury to Vision and Nervous Shock—Evidence—Damages—Allegation of Special Damage—Sick Benefits—Starting Street Car Prematurely.*

Plaintiff, while attempting to board an open trolley car on defendant's road, was thrown off and injured because the car was suddenly started upon a signal from the conductor before plaintiff had entered. In an action to recover damages plaintiff's evidence was that his eyesight had been impaired by the accident because of a jar to the optic nerve. The declaration contained no special allegation of an injury to plaintiff's vision. *Held,* that the injury to the vision was such a natural consequence of the accident that, if the jury found that it resulted therefrom, plaintiff could recover damages for it without any special allegation of such damage in the declaration.

Plaintiff's evidence in this case was to the effect that the accident complained of had caused a shock to his nervous system which injured the optic nerve and diminished his power of making calculations, and subsequently produced emaciation. *Held,* that this evidence was admissible, the nervous shock not being made an independent ground for awarding damages but only being considered in connection with other evidence to determine the extent of the injury suffered.

It was not error to refuse to allow the plaintiff to be asked upon cross-examination if the medical witness in the case had not advised him to bring the suit, because the question had been answered in the negative before the ruling of the Court upon it, and it was not asked for the purpose of contradicting the medical witness.

When a passenger while endeavoring to board a street car is thrown off and injured because the car is started by the conductor prematurely, and before the passenger has an opportunity of taking a safe position, there is such negligence on the part of the conductor as entitles the passenger to recover damages for the injury.

In an action to recover damages for a personal injury the sick benefits that the plaintiff may have received from an association are not to be considered by the jury in estimating the damages.

Appeal from the Court of Common Pleas (HARLAN, C. J.) The declaration in this case alleged " that the defendant operates for its own uses and purposes, a line of railway along and upon the streets of the city of Baltimore, propelled by electric force or power, and is a common carrier of passengers for hire ; that heretofore, to-wit, on or about the 7th day of May, 1897, the plaintiff, at the corner of Eutaw and Baltimore streets, in said city, hailed a car of the said defendant, for the purpose of becoming a passenger ; that after said car had stopped the plaintiff then and there stepped upon the first or lower step of the platform, and while in the act of ascending the same, for the purpose of entering the car, said car by reason of the negligence and want of care of the agents and servants of the defendant, in the management and control thereof, was prematurely started before the plaintiff could properly enter the same, and was precipitated to the street and dragged a considerable distance, in consequence whereof he received a serious nervous shock; was injured about the body, arms and head; his clothing injured and damaged; has suffered great physical pain; has been compelled to lay out and expend money in and about his attention and care, and has been deprived of the opportunity to attend to his business or avocation of a traveling salesman, and has been otherwise injured and damaged. And the plaintiff says that his injuries aforesaid were directly caused by the negligence and want of care on the part of the defendant, its agents and servants in the premises, and without fault on the part of the plaintiff directly contributing thereto; wherefore this suit is brought."

The plaintiff's fourth prayer was that: " If the jury shall find a verdict for the plaintiff, then in estimating the damages they are to consider his health and condition before the injury complained of as compared with his present condition in consequence of said injury, and whether the same is in its nature permanent, and how far, if at all, it is calculated to disable him from engaging in employments, for which, in the absence of such injury he would have been

qualified, and also the physical and mental suffering, if any, to which he was subjected by reason of such injury, and to allow him such damages as in the opinion of the jury will be a fair and just compensation for the injury he has sustained."

This was granted in connection with defendant's prayer which asserted that the plaintiff was not entitled to recover for any loss in his business.

*Defendant's 9th Prayer.*—" That the law makes no unreasonable demand.    It does not require superhuman wisdom or foresight.    Therefore no one is guilty of culpable negligence by reason of failing to take precautions which no other man would be likely to take under the circumstances."

*Defendant's 10th Prayer.*—There is no legally sufficient evidence to authorize the jury to award any damages for permanent injuries.

The plaintiff obtained a verdict for $500.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Arthur W. Machen* and *William S. Bryan, Jr.*, for the appellant.

The plaintiff was neither infirm, lame, nor in any way disabled.    Unless before a *rapid transit* car can start again on its course, after receiving passengers, it is necessary for it to wait until all those passengers are seated, there was no failure of duty on the part of the defendant.    But no such obligation rests on the carrier.    " A railroad company need not wait for a passenger to reach his seat before starting the train unless there is some special reason therefor, as in case of a weak or lame person, and then the carrier must have notice of the fact creating the exception."    *Yarnell* v. *Kansas City, Fort Scott & Memphis R. R. Co.,* 113 Mo. 570.    " Negligence on the part of those in charge of a cable car cannot be inferred merely from the fact that as plaintiff was about to take his seat he was thrown to the floor by the

sudden starting of the car, there being no evidence that any unnecessary or unusual force was applied by the gripman." *Black* v. *Third Ave. R. R. Co.*, 37 New York Supp. 830. That the car is said to have given a jerk is no evidence of any negligence in its operation. *Black* v. *Third Ave. R. R. Co.*, 37 N. Y. Supp. 831; *Balto. and Yorktown Turnpike Co.* v. *Cason*, 72 Md. 382. The plaintiff had *both* feet on the footboard and his left hand on the upright, and was "just about getting to my (his) seat" when the conductor pulled the bell and the car started. When an apparently able-bodied passenger had hold of the upright and had both of his feet on the footboard, and when he was about to take his seat, could any reasonable person suppose that he was not in a place of safety; or that it was in anywise negligent in the conductor to give the signal for the car to proceed?

Before there can be any recovery for any permanent injury, there must be *a reasonable certainty* that such permanent injury exists. *White* v. *Milwaukee Railway Co.*, 61 Wis. 541; *Hardy* v. *Milwaukee Railway Co.*, 89 Wis. 189; *Railroad* v. *Dashiell*, 7 D. C. Appeals, 574. The jury cannot be allowed to go into the field of mere probability. *Hardy* v. *Railroad*, 89 Wis. 183.

There is no mention in the declaration of any impairment of vision or of any loss of memory. The defendant is nowhere notified that a claim will be made that because the plaintiff claims to have been thrown from and dragged by a car, he has suffered an impairment of both sight and memory. No one reading the declaration would imagine that he was called on to defend himself against a claim that any such improbable and extraordinary result flowed from the alleged injury to the plaintiff. If without notice of the intention to make such claims being given in the pleadings, evidence of injuries of this remote and improbable character can be *sprung* on the defendant in these personal injury cases, or indeed, in any cases, the door is very wide open for deception and fraud. The general statement that the plaintiff was *otherwise* injured, of course, could have no

effect in giving the defendant notice of the particulars of his claim, or in enabling him to meet, and if possible refute the evidence as to any given character of injury.    It was simply equivalent to the statement of *alia enormia* in the old common law precedents.  2 *Greenleaf's Evidence*, secs. 254,278 ; 1 *Chitty Pl.* 388.

The third exception was to the refusal of the Court to allow the defendant, on cross-examination, for the avowed purpose of testing the *bona fides* of the suit, to ask the plaintiff if Dr. Atkinson did not advise him to bring this suit on the very day the accident occurred.    Surely, if the medical man to whom he says he went on the day of the alleged accident acted as a damage case *runner*, and advised the plaintiff at once to bring suit, it would be a material fact for the jury to consider in determining what weight was to be given to the plaintiff's statements as to his condition.

There can be no recovery for nervousness or nervous shock caused by an injury.    The general rule is undoubted and familiar that there can only be a recovery for such results of an injury as are its direct, proximate and *natural* effects.    As said by CHIEF JUSTICE ALVEY, speaking for this Court :  " They (the defendants) must be taken to know, and to contemplate all the natural and proximate consequences, not only that certainly would, but that *probably might* flow from their wrongful act." *Balto. City Pass. R. Co.* v. *Kemp*, 61 Md. 81.    It has on this ground been held by high authority that where a personal injury, inflicted through the negligent act of the carrier, is followed by insanity of the passenger, there can be no recovery on this ground. *Heile's Curator* v. *Texas & P. R. Co.* 60 Fed. Rep. 557 ; *Scheffer* v. *R. R. Co.* 105 U. S. 252 ; *Comr's* v. *Coultas* L. R. 13 App. Cas. 242 ; *Dashiell* v. *Railroad*, 7 App. Cas., D. C. 513.

*William Colton* (with whom was *H. Tebbs*, on the brief), for the appellee.

The evidence objected to in the first exception was admissible without any special allegation in the declaration.

*Percy* v. *Ryan*, 64 Md. 436; *New Albany Ry. Co.* v. *Falvey*, 104 Ind. 443; *Ohio Ry. Co.* v. *Selby*, 47 Ind. 471.

The testimony of Dr. Atkinson, a medical expert, as to the consequences of the injury suffered by the plaintiff was admissible. *B. & R. Co.* v. *Thompson*, 10 Md. 76; *Negro Jerry* v. *Townsend*, 9 Md. 159; *Fairchild* v. *Bascomb*, 35 Vt. 298; *Davis* v. *State*, 35 Ind. 496; *Flynt* v. *Bodenhammer*, 80 N. C. 205. The testimony as to plaintiff's nervous disorder was admissible. *Sloan* v. *S. C. Ry. Co.*, 32 L. R. A. 193; *Sedgwick on Damages* sec. 861; 1 *Bevan on Negligence*, 72-81; *Purcell* v. *St. Paul City Ry. Co.*, 48 Minn. 134, 16 L. R. A. 203.

SCHMUCKER, J., delivered the opinion of the Court.

The appellee sued the appellant company for injuries sustained by him when boarding one of its cars. The injuries were received on May 7th, 1897, and the suit was brought on the 22nd of the same month. The declaration avers that the appellee hailed the car at the corner of two streets; that it stopped and he attempted to board; it but that it was negligently and prematurely started before he could get into it, and he was thrown to the street and dragged for some distance, whereby " he received a serious nervous shock; was injured about the body, arms and head;" was compelled to lay out money, &c., " and had been deprived of the opportunity to attend to his business or avocation of a traveling salesman," &c.

The accounts given by the witnesses of the happening of the accident are conflicting, but it is sufficient for the purposes of this opinion to say that there was evidence tending to show the following facts: The appellee attempted to board an open trolley car when it had come to a stop at the corner of Eutaw and Baltimore streets ; he had gotten both feet upon the footboard which runs along the side of the car and was about to step up into the car, when, at the signal of the conductor, it started with a sudden jar and threw him off the footboard and dragged him along the

street for from thirty to fifty feet before the conductor was able to stop it. The appellee held to one of the sidebars of the car until it was stopped and he was bruised and injured in the legs, side and abdomen by being dragged along in that position. The evidence tended also to show that some of these injuries were of a permanent nature.

At the trial of the case, on March 25th, 1898, the appellee having testified that since the accident he had lost a great deal of his will-power and physical power; was asked by his counsel what was the condition of his vision before the injury as compared with it afterwards; to which he replied that there was considerable change ; that he did not see as well now as before the accident. He was further asked by his counsel whether or not he was compelled to make calculations of his purchases and sales in his business, and whether there was any difference in his condition in that respect since the injury as compared with his condition before the injury, to which he replied that he found some deficiency in that respect; that before the accident he could figure more quickly.

Dr. Archibald Atkinson, who attended the appellee professionally after the accident, when asked whether, in his opinion as a medical, man the injury received by the appellee would probably affect his vision, testified as follows : " Vision is a thing very hard to get at unless you have regular examinations, but I should think the injury was sufficient to so jar the optic nerve as to cause a diminution in that respect ; I couldn't say positively; I wouldn't say positively." The same witness being asked whether the appellee's alleged inability to figure as quickly after as before the accident would probably and ordinarily arise from such an injury as he had received, replied : " Well the brain is greater than the optic nerve, the optic nerve is only a small part of it, and if it is affected the optic nerve is also affected."  *  *  *  " My conclusion would be yes." He also testified that he saw no special nervous symptoms in the appellee at the time of the accident but that his condition ten months afterwards,

at the time of the trial, he being then very much emaciated, was the effect of some injury to the nervous system, and would go toward showing that he had suffered some great shock or injury.

The appellant excepted to the admission of all this testimony of the appellee and his physician, and by its sixth and seventh prayers, which the Court rejected, asserted that there was no legally sufficient evidence to enable the appellee to recover for any injury to his nervous system, nor any sufficient evidence *under the pleadings* to enable him to recover for any injury to his vision.  The questions presented by these exceptions and prayers are first, whether the injury to the vision of the appellee was such a natural consequence of the accident which occurred to him that it did not require to be specially alleged in the declaration in order to enable him to recover for it, and secondly, whether there was any legally sufficient evidence that he had in fact suffered injury to his vision or from nervous shock.

This Court has had frequent occasion to consider and apply the proposition that damages which are not the natural and probable consequences of the injury complained of cannot be recovered unless they have been set out in the declaration.  In the cases of *Ellicott* v. *Lamborne*, 2 Md. 136, and *McTavish* v. *Carroll*, 13 Md. 429, both of which were actions for damages to real estate, the Court held that all damages must be specially alleged which are not the necessary consequences of the act complained of, even though they may be the natural and probable effect of it, but in more recent cases of suits for personal injuries the doctrine has been more broadly and liberally stated.

In *Sloan* v. *Edwards*, 61 Md. 99, where this issue was distinctly raised by the prayers, it was held that, although the damages recoverable must be the *natural and proximate* consequences of the act complained of, such consequences include all damages of which the act was the efficient cause, even though the damages did not occur until sometime after the act was done, and were not contemplated or foreseen by

the wrongdoer. The Court in that case cited, with approval, the case of *Tyson* v. *Booth*, 100 Mass. 258, which held that the plaintiff might show specific direct effects of the wrongful act complained of without specially alleging them in the declaration.    In *Sloan* v. *Edwards*, the action was for damages for an assault and battery, and the plaintiff was permitted, without special allegation to that effect, to prove that he had as a result of the battery become subject to convulsions or fits.    In the opinion, JUDGE ALVEY, speaking for the Court, says :  " Of course it was for the jury to determine whether the fits or spasms resulted from the assault and battery complained of, and it was only in the event of finding in the affirmative that such consequences could be considered in estimating the damages."

The case of *Kemp* v. *Balto. City Pass. Railway Co.*, 61 Md. 79–82, much resembles the one at bar.    In that case a cancer developed in Mrs. Kemp's breast at a spot that had been bruised by the sudden starting of a street car from which she was about to alight.    The doctors, of whom a number testified, all said that it is impossible to be certain as to the cause of a cancer, but they agreed that the blow received by Mrs. Kemp was sufficient and may have been the cause of the development of the cancer in her case, and two of them stated that under the circumstances of the case they would attribute the cancer to that cause.    The *narr.* contained no special allegation of the cancer, yet the evidence was permitted to go to the jury, the Court holding that " if the jury believed from all of the evidence before them that the cancer in the breast of Mrs. Kemp was the natural and proximate consequence of the blow received on her breast by the negligent act of the defendants it would properly form an element to be considered in awarding damages for the pain and injury suffered by her."  *  *  *  " It is not for the defendants to say that because they did not or could not in fact anticipate such a result of their negligent act they must therefore be exonerated from liability for such consequences as ensued."

Upon the authority of these cases we think that the testimony relative to injury to the vision of the appellee was properly permitted to go to the jury to be considered by them in estimating the damages, if they determined from all the evidence that such injury resulted from the accident complained of.

We think the same principle applies to the testimony excepted to in reference to an alleged nervous shock to the appellee. Nervous shock was only spoken of incidentally by the witness in connection with the emaciation and want of nutrition on the part of the appellee·which were present some months after the accident and may have been caused by it. The medical witness testified that in his opinion the injury suffered by the appellee was sufficient to produce all the bad results of which we have spoken.

There was no attempt in the case at bar as there was in the case of *Dashiel* v. *Railroad,* 7 App. Cases, Dist. of Columbia, 513, which was much relied on by the appellant, to procure an instruction to the jury making the loss to vision or the nervous shock a separate and independent ground for awarding damages. The evidence in reference to these two elements of damage was not in itself conclusive but it was in our opinion sufficient to go to the jury to be considered in connection with the other testimony in order to determine to what, if any extent, the injuries to the appellee resulted from the accident, and also in order to estimate the amount of damages from such of the injuries as they should conclude arose from that cause. It follows from what we have said that the appellant's sixth and seventh prayers were properly rejected.

We find no reversible error in the refusal of the Court below to permit the appellant's counsel to ask the appellee upon cross-examination if Dr. Atkinson, the medical witness, did not advise him on the very day on which the accident happened to bring this suit. If the question was intended to test the *bona fides* of the witness, or show an interest on his part in the suit, and thus affect the weight

of his testimony, no harm was done to the appellant by its rejection, for the appellee, before the Court had ruled upon the subject, promptly answered the question in the negative. If it was intended to lay a foundation for contradicting the doctor he should have first been asked if he had advised the bringing of the suit, but that was not done.

The appellant's ninth and tenth prayers were properly rejected ; the ninth because it was general and abstract in its statements and not connected with or applied to the facts of the case, and the tenth because there was the evidence of the medical witness that some of the injuries of the appellee were permanent in their nature.    The eleventh prayer of the appellant which requested the Court to take the entire case from the jury for want of legally sufficient evidence was also properly rejected.    The evidence as to the circumstances under which the accident occurred was conflicting, as we have already said, but the appellee testified that he hailed the car for the purpose of getting on it ; that it stopped, and he then started to mount it, and had gotten both feet upon the side platform and was about to enter the car, but as soon as he got on the platform and before he could get to a seat the car started with a sudden jar and threw him off and injured him.    His testimony was in part corroborated by the witness Hoffberger.    In view of this testimony it would have been improper for the Court to have taken the case from the jury.

If the appellee's testimony be true, the conductor of the car was made aware of his desire to board the car and stopped it for the purpose of allowing him to do so.    If the conductor then started the car prematurely without allowing the appellee a reasonable opportunity under the circumstances of first taking a safe position, he was guilty of negligence, and under the rulings of this Court in *Central Railway Co.* v. *Smith,* 74 Md. 214, and *Baltimore Traction Co.* v. *Ringgold* 78 Md. 426, the appellee was entitled to recover.    It is desirable, in order to facilitate rapid transit in large cities, that passengers should be prompt in entering

and departing from street cars, but those operating the cars must take every reasonable precaution for the protection of the passengers.    It is a well-known fact that the footboard running along the side of the ordinary open trolley car is narrow, and that both the step from the pavement to the footboard and the one from the latter to the floor of the car are high.    A fair opportunity of taking these two steps in safety should always be afforded to the passenger before starting the car.

The law of this case was correctly stated in the appellee's prayers which were granted by the Court, and which with the exception of the sixth one were copied from those which met the approval of this Court in the case of the *P. W. & B. R. R. Co.* v. *Anderson*, *72* Md. 519.    The sixth prayer asserts the correct proposition that any sick benefits received by the plaintiff from any source other than the defendant were not to be considered by the jury in making up their verdict.

> *The judgment will be affirmed with
> costs.*