## WILLIAM EDWARD TAYLOR, JR. *v.* STATE OF MARYLAND

[No. 150, September Term, 1975.]

*Decided November 5, 1975.*

The cause was argued before ORTH, C. J., and GILBERT and MELVIN, JJ.

*Howard L. Cardin, Assigned Public Defender,* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William E. Brannan, State's Attorney for Baltimore County,* and *Steven D. Silverman, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

The text writers on the law of evidence are generally agreed that cross-examination of character witnesses as to specific acts of a defendant for the purpose of testing the witnesses' knowledge and credibility is permissible as an exception to the rule that forbids the impeachment of witnesses by extrinsic testimony of such acts.[1] *See Commonwealth v. Selkow,* 206 Pa. Super. 273, 212 A. 2d 919 (1965). The Supreme Court in *Michelson v. United States,* 335 U. S. 469, 69 S. Ct. 213, 93 L. Ed. 168 (1948), the Court of Appeals in *Comi v. State,* 202 Md. 472, 97 A. 2d 129 (1953) and this Court in *Avery v. State,* 15 Md. App. 520, 292 A. 2d 728 (1972), *cert. denied,* 266 Md. 733 (1972), *appeal dismissed,* 410 U. S. 977 (1973), have all adopted views to the effect that:

---

1. *See* 3A J. Wigmore, *Evidence* § 988 (Chadbourn rev. 1970); *McCormick's Handbook of the Law of Evidence* § 191 (2d ed. E. Cleary 1972); 2 C. Torcia, *Wharton's Criminal Evidence* § 426 (13th ed. 1972); 1 H. Underhill, *Criminal Evidence* § 197 (5th ed. 1956).

"A character witness may be cross-examined as to an arrest whether or not it culminated in a conviction. . . ." *Michelson v. United States,* 335 U. S. at 482.

Subsequent to the *Michelson* decision the Supreme Court decided *Burgett v. Texas,* 389 U. S. 109, 88 S. Ct. 258, 19 L.Ed.2d 319 (1967) in which the Court ruled that a conviction obtained in violation of *Gideon v. Wainwright,* 372 U. S. 335, 83 S. Ct. 792, 9 L.Ed.2d 799 (1963) could not be used "to support guilt or enhance punishment." Later, the Court adjudicated *United States v. Tucker,* 404 U. S. 443, 92 S. Ct. 589, 30 L.Ed.2d 592 (1972) and thus extended *Burgett* so as to proscribe, in sentencing, the use of convictions obtained in violation of an accused's fundamental right to counsel. *See Carroll v. State,* 19 Md. App. 179, 310 A. 2d 161 (1973); *Moore v. State,* 17 Md. App. 237, 300 A. 2d 388 (1973); *Towers v. Director,* 16 Md. App. 678, 299 A. 2d 461 (1973).

In *Loper v. Beto,* 405 U. S. 473, 92 S. Ct. 1014, 31 L.Ed.2d 374 (1972), Mr. Justice Stewart, writing for the plurality,[2] said:

"Unless *Burgett* is to be forsaken, the conclusion is inescapable that the use of convictions constitutionally invalid under *Gideon v. Wainwright to impeach a defendant's credibility* deprive him of due process of law." 405 U. S. at 483. (Footnote omitted). (Emphasis supplied).

Mr. Justice Stewart went on to quote with approval the words of the Court of Appeals for the First Circuit in *Gilday v. Scafati,* 428 F. 2d 1027, 1029 (1st Cir. 1970) wherein that Court said:

"We conclude that the *Burgett* rule against use of uncounseled convictions 'to prove guilt' was intended to prohibit their use 'to impeach credibility', for the obvious purpose and likely

---

2. Mr. Justice Stewart was joined by Justices Douglas, Brennan and Marshall. Mr. Justice White concurred in the result. The Chief Justice dissented and was joined therein by Mr. Justice Powell. Mr. Justice Rehnquist and Mr. Justice Blackmun filed separate dissents.

effect of *impeaching the defendant's credibility* is to imply, if not prove, guilt. Even if such prohibition was not originally contemplated, we fail to discern any distinction which would allow such invalid convictions to be used to impeach credibility. The absence of counsel impairs the reliability of such convictions just as much when used to impeach as when used as direct proof of guilt." (Emphasis supplied).

It is plain that the trinity of *Burgett, Tucker,* and *Loper* banned the use of constitutionally infirm convictions as a basis of (1) enhancing punishment of the defendant, (2) supporting guilt of the defendant, or (3) impeaching the credibility of the defendant. What is not so plain is, do the holdings of *Burgett, Tucker,* and *Loper* prohibit the use of defendants' admittedly constitutionally defective convictions in cross-examining defendants' character witnesses.[3]

William Edward Taylor, Jr., appellant, was convicted at a jury trial, in the Circuit Court for Baltimore County, presided over by Judge Kenneth C. Proctor, of murder in the second degree, use of a handgun in the commission of a felony, assault upon a police officer and another similar charge of assault. At trial, immediately prior to the presentation of the defense, counsel apprised the court that a problem had arisen relative to cross-examining the defendant's "character witnesses". The judge was advised that the State possessed knowledge that appellant had been convicted twice in 1963 of assault. In April of 1963 he had been "found guilty of assault by striking someone and fined $13.00." The following month of that year he was adjudged

---

3. The term character witness appears to be a misnomer that is widely accepted. What is usually meant when such a term as "character witness" is used is "reputation witness". *See* Michelson v. United States, 335 U. S. at 477 wherein it is said, "What commonly is called 'character evidence' is only such when 'character' is employed as a synonym for 'reputation'."

A reputation may, as Shakespeare penned in *Othello,* Act II, scene iii, line 270, be ". . . an idle and most false imposition; oft got without merit, and lost without deserving." Nevertheless, our reputation is that by which we are known and is the total sum of how we are seen by others. Character, more philosophically, is the inner man; it is what we really are, not what we are thought to be.

"guilty of assault and battery and fined $53.00." Both convictions antedated *Gideon,* were without benefit of counsel, and were constitutionally infirm. If questions concerning the convictions were posed to the appellant, they would be impermissible under *Burgett, Tucker,* and *Loper.* The appellant vigorously objected to the State's request that it be permitted to interrogate the character witnesses about the two pre-*Gideon* convictions.

Appellant was under the impression that such testimony could not be properly allowed under *Burgett* and its siblings. The State, however, on the strength of this Court's decision in *Avery v. State, supra,* and the Court of Appeals's decision in *Comi v. State, supra,* carried the day and was granted permission to cross-examine the character witnesses with respect to their knowledge of the two 1963 convictions for assault.

The appellant produced a series of witnesses, all of whom had known the appellant for a number of years and who testified as to his good reputation in the community. One witness, in response to a question by the trial court as to whether the witness "[w]ould ... believe [appellant] no matter what he says" responded, "There's a doubt in my mind," but that appellant was a "peaceful man." On cross-examination inquiry was made as to whether the witness had ever heard ". . . that in 1963, specifically April 1, 1963, that Mr. Taylor was found guilty of an assault by striking a Baltimore County police officer," and ". . . fined $13.00 at that time." Further interrogation sought to ascertain if the witness had ever ". . . heard that on May 21, 1963, Mr. Taylor was found guilty of an assault and battery in Baltimore County, and fined $53.00. . . ." To both questions the witness replied in the negative. A second witness testified as to appellant's "excellent" reputation for "truthfulness and veracity." The witness characterized Taylor as a "peaceful person." The witness was not, however, cross-examined relative to the 1963 convictions. A third witness, a clergyman, stated that Taylor "was always truthful", and that he considered the appellant a "reliable" and "peaceful person." When cross-examined by the

Assistant State's Attorney, the witness readily acknowledged that he did not know that appellant had been living at an address different than the one about which the minister had been told, and that even if the witness had known, that knowledge would not alter the clergyman's opinion of the appellant. The clergyman further said that he had not heard of the two 1963 convictions for assault.

Taylor, testifying in his own defense, made a judicial confession that he had shot and killed the decedent, Barbara Bernice Daughton, on December 3, 1973. Following the jury's verdicts on the various counts of the indictment, Judge Proctor sentenced Taylor to thirty years for the second degree murder, and to a five year consecutive term for the handgun violation. The other two sentences are to be served concurrently.

In this Court Taylor voices objection to the use at his trial of the 1963 convictions on the ground that they were barred by *Gideon v. Wainwright, supra,* and that their use either to "support guilt or enhance punishment for some other offense" erodes the principle of *Gideon* and violates *Burgett.* We glean from counsel's argument that he is in effect relying upon Heywood's *Proverbs,* Bk. 2, ch. 6 (1546) wherein it is said, "He that hath an ill name is half hang'd ye know."

Because a person's prior convictions may, as seen by some eyes, cause him to be "half hang'd", the law, in order to protect a defendant, insists, however, that the convictions must have been constitutionally obtained before they are admissible for the purpose of impeachment of the defendant. When an accused objects to the State's use of prior convictions for purposes of impeachment, the State, out of the presence of the jury, must be able to convince the court of the constitutionality of such convictions before they may be utilized. *Moore v. State, supra; Johnson v. State,* 9 Md. App. 166, 263 A. 2d 232 (1970). *Moore* and *Johnson* are concerned, as are *Burgett, Tucker,* and *Loper,* with precluding the State's cross-examination of a *defendant* as to his constitutionally invalid prior convictions.

We do not read the trilogy of *Burgett, Tucker,* and *Loper* as proscribing the use under all circumstances of

unconstitutionally obtained convictions.[4] On the contrary, each of those cases, as we have noted, dealt with a defendant who had taken the stand and was then interrogated by the State relative to constitutionally infirm prior convictions. We see a vast difference between a defendant's taking the stand in his own defense and then being subjected to cross-examination about constitutionally invalid prior convictions and the cross-examination of a so-called "character witness". In the former, some text writers think that if the accused declines to testify, a jury, despite instructions to the contrary, may well assume his guilt, but no such assumption will be made by the jury from a failure of a defendant to call witnesses to testify as to the defendant's good reputation. *McCormick's Handbook on the Law of Evidence* § 191 (2d ed. E. Cleary 1972). We observe that it is the defendant in the first instance who opens the door to reputation testimony by his introduction of such evidence. When an accused offers evidence intended to show that he is regarded in the community as a truthful, peaceful and honest person, so that a jury may infer that he would not likely be the type of person who would commit the crime charged, he must expect that the State will pursue the matter in order to demonstrate that the appellant's witnesses are not credible or not knowledgeable, or both. In short, while the State is generally precluded from showing an accused's past reputation, "[t]he price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him." *Michelson v. United States*, 335 U. S. at 479. Mr. Justice Jackson, in *Michelson, supra,* said:

> ". . . Another hazard is that his [the accused's] own witness is subject to cross-examination as to the contents and extent of the hearsay on which he bases his conclusions, and he may be required to

---

4. Loper, 405 U. S. at 485 (White, J., concurring), and Burgett, 389 U. S. at 115, indicate that even if the use, in cross-examining a defendant, of constitutionally defective prior convictions is improperly permitted, it is still possible for such use to amount to no more than harmless error.

disclose rumors and reports that are current even if they do not affect his own conclusion. It may test the sufficiency of his knowledge by asking what stories were circulating concerning events, such as one's arrest, about which people normally comment and speculate. Thus, while the law gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans." 335 U. S. at 479. (Footnote omitted).

2 C. Torcia, *Wharton's Criminal Evidence* § 426 (13th ed. 1972) states the common law rule:

"A character witness may be cross-examined regarding rumors or reports of particular acts or misconduct imputed to the defendant. The particular acts or misconduct may not be so remote in point of time from the commission of the crime charged as to supply, by that fact alone, a strong inference of reformation. Needless to say such acts or misconduct must have occurred prior to, and not after, the commission of the crime charged." (Footnote omitted).

*See also* 3A J. Wigmore, *Evidence* § 988 (Chadbourn rev. 1970).

A character witness at common law could be cross-examined about specific or particular acts or courses of conduct of a defendant, but on direct examination he could not testify to such specific or particular acts or courses of conduct. His testimony was, in essence, limited to what he heard from others about the defendant's reputation. The common law has been modified by statute in Maryland. Courts and Judicial Proceedings Article § 9-115 provides:

"Where character evidence is otherwise relevant to the proceeding, no person offered as a character witness who has an adequate basis for forming an

opinion as to another person's character shall hereafter be excluded from giving evidence based on personal opinion to prove character, either in person or by deposition, in any suit, action or proceeding, civil or criminal, in any court or before any judge, or jury of the State." [5]

As a result of the enactment of what is now Courts Art. § 9-115, Maryland possesses the common law rule with a vastly broadened field of vision. No longer is a character witness prevented from speaking of specific acts or precluded from demonstrating a basis of knowledge leading to his own independent opinion. To an extent, this State has eliminated some of the underlying hearsay present in the common law rule relative to character witness testimony.[6]

The cross-examination of a character witness is not boundless. *Wharton's Criminal Evidence* warns:

"Cross-examination of a character witness regarding prior acts or misconduct of the defendant is fraught with such obvious danger of prejudice to the defendant that the trial judge should carefully limit its impact by an appropriate admonition as to its purpose. Moreover, in cross-examining the character witness, the prosecuting attorney must act in good faith, which means at least that the subjects of inquiry — i.e., the prior acts or misconduct imputed to the defendant — should have some basis of actuality. A lack of good faith may constitute prejudicial error, as may interrogation for the sole purpose of getting

---

**5.** Originally enacted by Laws of Maryland 1971, ch. 760, and codified as Md. Ann. Code art. 35, § 13C. Upon the adoption at the 1st Special Sess. 1973 of the Courts and Judicial Proceedings Article, former Code art. 35, § 13C became § 9-115.

**6.** The rule at common law did not allow a character witness to testify about specific acts or courses of conduct of a defendant, nor was the witness permitted to express his own independent opinion even though it was based on acquaintance, observation, or actual knowledge. Rather the witness was required to discount what he knew and credit what he had heard from others notwithstanding that the witness may or may not be more qualified to make a judgment than those upon whom he had to rely. Michelson v. United States, *supra.*

otherwise improper evidence before the jury." [7] 2 C. Torcia, *Wharton's Criminal Evidence* § 426 (13th ed. 1972) (Footnotes omitted).

*Michelson* counsels that the wide discretion allowed trial judges in determining whether to permit such a cross-examination ". . . is accompanied by heavy responsibility . . . to protect the practice from any misuse." 335 U. S. at 480. *Michelson* has made it crystalline that the presentation of character witnesses by a defendant opens the door to cross-examination concerning the defendant's prior arrests or convictions. It is equally transpicuous that it is the trial judge who is to determine what passes through that door. *Awkard v. United States*, 352 F. 2d 641 (D.C. Cir. 1965). We think trial judges should bear in mind that the purpose of the cross-examination of the character witness is to affect the weight of the witnesses' testimony, not discredit the person on whose behalf the witness is testifying. *Brown v. State*, 477 S.W.2d 617 (Tex. Crim. 1972).

We decline to extend the holdings of *Burgett, Tucker, Loper, Carroll, Moore,* and *Towers* so as to prohibit the use of a defendant's constitutionally deficient prior convictions in cross-examining character witnesses. There is, in our view, nothing in the Federal or State Constitutions that prohibits the prosecution from cross-examining a defendant's character witnesses so as to test their credibility and knowledge. Such a test is permissible, *inter alia,* so that the prosecution might show that the character witness, notwithstanding his or her knowledge of the accused's lengthy involvement in heinous crimes, nevertheless, incredibly, considers the accused to be a peaceful, law abiding person. The prosecution might test whether the character witness knew of the prior criminal convictions of the defendant, and if not, whether such knowledge would alter the witness's opinion. In the former example, the

---

7. In Williams v. State, 15 Md. App. 320, 290 A. 2d 542 (1972) this Court reversed a conviction for violation of the narcotics laws because a prosecutor elicited, from the defendant, over objection, "specific acts of misconduct" and he further read to the jury "the entire count of an indictment under which the appellant was convicted of carrying a concealed deadly weapon."

questioning would demonstrate that the witness was not credible, in the latter that he was not knowledgeable.

We think that *Burgett, Tucker,* and *Loper* did not overrule or modify *Michelson,* nor did we in *Carroll, Moore* or *Towers* extend their holdings. Those cases were addressed and limited to the impermissible use of constitutionally imperfect prior convictions in the cross-examination of an accused or at time of sentencing. We note that Judge Proctor instructed the jury that any testimony concerning convictions that were put to the character witnesses ". . . have no weight whatsoever, no validity whatsoever, as to the guilt or innocence of Mr. Taylor." The evidence was admitted solely for the purpose of impeaching the credibility of the character witnesses. We perceive no error in Judge Proctor's allowing the State to interrogate the appellant's character witnesses as to their knowledge of the appellant's prior convictions for assault.

Appellant next argues, and the State agrees, that the trial judge erred in construing Md. Ann. Code art. 27, § 36B (d) as requiring the court to impose a consecutive sentence for the use of a handgun in the commission of a felony. This Court in *Wright v. State,* 24 Md. App. 309, 330 A. 2d 482 (1975), *cert. denied* by the Court of Appeals, April 7, 1975, held that consecutive sentences were not mandated by the Code. In fairness to the trial judge, we point out that *Wright* was decided subsequent to the trial in the instant case. At sentencing the judge indicated that he had "no choice" but to impose the consecutive sentences, while, as we have made clear under *Wright,* there is a choice. We affirm the conviction for that offense, but vacate the sentence thereon in order that the judge may reconsider the same.

> *Judgments as to counts 1, 4 and 5, affirmed.*
> *Conviction as to count 3 affirmed; sentence vacated and case remanded for the imposition of a new sentence.*