# JAMES DANIEL BECKETTE *v.* STATE OF MARYLAND

[Nos. 798 and 799, September Term, 1975.]

*Decided April 1, 1976.*

The causes were argued before THOMPSON, GILBERT and MASON, JJ.

*Harold Buchman* for appellant.

*James G. Klair, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County* and *Thomas J. O'Connell, Assistant State's Attorney for Baltimore County* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

On June 3, 1975, James Daniel Beckette, appellant, was convicted, on indictment number 49907, by a jury, in the Circuit Court for Baltimore County, of daytime housebreaking, assault and the use of a handgun in the commission of a felony. Appellant was also convicted, on June 13, 1975, on indictments number 50711 and number 51183, by a jury presided over by Judge Marvin J. Land, in the Circuit Court for Baltimore County, of rape, use of a handgun in the commission of a felony, daytime housebreaking, assault with intent to rape, and assault. The terms imposed upon appellant as a result of both trials aggregate forty years.

Appellant has appealed all judgments of the circuit court. For purposes of clarification in discussing the facts and applicable law, we shall assign to the appeal from the judgment entered on the June 3, 1975, conviction the

indictment number 49907, and indictment numbers 50711 and 51183 shall refer to the appeal from the judgments entered in the court presided over by Judge Land. We shall treat each appeal separately within the confines of this opinion.

## *Indictment No. 49907*

The evidence discloses that an intruder unlawfully gained entrance into the home of the prosecutrix and her husband while the prosecutrix's husband was away at work. The intruder climbed the stairway to a second floor bedroom where the prosecutrix was reclining on her bed. The room was well lit from sunlight. The prosecutrix pulled her knees to her chest in an effort to ward off the intruder who was armed with a revolver. The intruder climbed onto the bed, stifled the prosecutrix's screams and pressed himself against her upraised legs. The woman told the intruder that if he would leave she would not report the matter to the police, and the intruder left the house. The police were called, and a subsequent investigation brought about the appellant's apprehension. The prosecutrix made a positive judicial identification of the appellant as the intruder. Appellant denied all knowledge of the offense and interposed a defense of alibi. Superimposed upon the alibi was the testimony of several character witnesses who testified to the appellant's good reputation for truth and veracity. One of the character witnesses was the appellant's former attorney in this case. The scope of the State's cross-examination of the witness, over objection, has led to the appellant's first contention in this appeal.

I

"The court erred in permitting the State to impeach the testimony of appellant's former attorney concerning appellant's character by introducing a letter written by the attorney to the appellant in the course of his employment as appellant's counsel in an entirely unrelated civil matter."

We do not agree that the letter was written by the attorney " . . . in the course of his employment . . . in an entirely unrelated civil matter."

The lawyer, who had represented appellant in this case prior to the time that the present counsel entered his appearance, struck his appearance in accordance with Md. Rule 125. Attached to the motion to strike the appearance of counsel was a carbon copy of a letter from then counsel to the appellant. The letter read, in pertinent part:

> "Re: Legal representation; criminal and domestic matters
>
> Dear Mr. Beckette:
>
> In accordance with the Maryland Rules of Procedure, Rule 525,[1] you are herewith advised of my intention to strike my appearance from any and all of your cases in which I have been your attorney. Said Motion to Strike Appearance will be filed with the Circuit Court of [sic] Baltimore, [sic] County on or after Monday, February 3, 1975.
>
> I regret that this action has become necessary, Jim, but it has. You have repeatedly sought my advice and counsel in these matters, and then acted in total disregard of the advice given. I find that I have no control over you or the case(s) and their development or resolution. Specifically, you have consistently withheld information from me, material to a criminal case defense. *You have given me false information on occasion. . . .*" [2] (Emphasis supplied).

Nevertheless, even if we assume that the letter was written on an "unrelated civil matter," that fact does not affect our

---

**1.** The letter from the attorney to the appellant refers specifically to Md. Rule 525 as authority for withdrawal from the case. Rule 525, however, is concerned with audits. It has no application, whatsoever, to the case at bar. What was obviously meant by counsel was Rule 125.

**2.** As far back as 1651, Sir Alan Patrick Herbert, in *Jacula Prudentum,* recorded a proverb that one should, "Deceive not thy physician, confessor, nor lawyer."

disposition. An attorney's obligation to respect the confidences of his client, with rare exceptions [3] not here applicable, continues after the termination of the lawyer's services and even survives the death of the attorney or the client. Md. Rule 1230, Appendix F, "Code of Professional Responsibility" § EC4-6; *Moore v. Bray,* 10 Pa. 519 (1849); 3 *Wharton's Criminal Evidence* § 560 (13th ed. C. Torcia 1973). Of course, the privileged communication status may be waived only by the client. The waiver may be either expressed or implied. *McCormick's Handbook of the Law of Evidence* § 93 (2d ed. E. Cleary 1972); 3 *Wharton's Criminal Evidence* § 561 (13th ed. C. Torcia 1973); 8 J. Wigmore, *Evidence* § 2327 (McNaughton rev. 1961).

Patently, the question in the case at bar is: Did the calling of the former lawyer by appellant as a character witness, posing to him an interrogatory which sought the attorney's personal opinion of appellant's "... reputation for truthfulness and veracity," and receiving a favorable answer thereto, open the door for the use of the attorney's letter as the basis of impeachment? We think it did. We explain why we so believe.

There can be no question but that appellant's former attorney was the one who made a matter of public record the accusation that appellant had furnished the attorney with "false information." The filing in the court of a copy of the letter containing the accusation placed the information within the purview of the public. Court files, unless sealed by order of the court, are properly viewable by any person. Md. Ann. Code, Courts and Judicial Proceedings Article § 2-203; *Perlman v. United States,* 247 U. S. 7, 38 S. Ct. 417, 62 L. Ed. 950 (1918); *Ex parte Uppercu,* 239 U. S. 435, 36 S. Ct. 140, 60 L. Ed. 368 (1915). *See also* Annot., 175 A.L.R. 1260, § 3 (1948) (Restricting access to judicial records); 66 Am. Jur. 2d *Records and Recording Laws* § 15 (1973); 20 Am. Jur. 2d *Courts* § 62 (1965). In this case, however, the disclosure that appellant had on occasion furnished his erstwhile counsel

---

**3.** *See* 3 *Wharton's Criminal Evidence* § 557 (13th ed. C. Torcia 1973) (examples of some of the exceptions to the general rule).

with false information was also communicated by the then attorney to Judge Raine, to the appellant's employer, and to the Pre-trial Release Division of the circuit court. The communication took the form of a carbon copy of the attorney's letter to appellant being directed to each of the above named. We are compelled to deduce that appellant was fully aware, or should have been, that the letter's content was known to the prosecution. Notwithstanding that knowledge, appellant elected to call his former lawyer as a character witness. The transcript disclosed the following:

> *"Direct Examination.*
>
> By Mr. Buchman:
>
> Q. How long have you known him?
>
> A. I have known Mr. Beckette since I was about twenty-one, which would be about fifteen years.
>
> Q. Did you at one time earlier represent him in these proceedings?
>
> A. Yes, and other proceedings.
>
>             \* \* \*
>
> Q. *As a result of your acquaintance with Mr. Beckette, have you been able to form any opinion as to his reputation for truthfulness and veracity?*
>
> A. *Yes.*
>
> Q. *What is your opinion?*
>
> A. I would say yes, Mr. Beckette is truthful.
>
> Q. Would you believe him under oath?
>
> A. Yes, sir.
>
> Q. Have you formed an opinion of his reputation in the community as a peaceful law-abiding person?
>
> A. Yes, sir. I have had an opportunity to do that since we worked together [in] the Essex Council, and I would say his character is

generally peace-loving, and he is an upstanding character in the community.

* * *

*Cross Examination*

By Mr. O'Connell [Assistant State's Attorney]:

Q. I believe you were also at one time Mr. Beckette's attorney, is that correct?

A. Yes, sir.

Q. Did you have occasion one time to send him correspondence, particularly January 26th, 1975?

Mr. Buchman: Your Honor, I would object to a confidential communication between client and lawyer.

The Court: I don't know what he is getting at. Overruled. What is the answer . . .?

A. (By the witness) I don't remember it.

Mr. O'Connell: May we approach the Bench? It would probably save a lot of trouble.

The Court: All right.

* * *

(Conference at the Bench.) [4]

The Court: Read back the last question.

(Whereupon, reporter read back the following question:

Question: Did you have occasion one time to send him correspondence, particularly January 26th, 1975?)

The Court: There was an objection made, and overruled.

---

4. The transcript does not disclose at what point the bench conference ended. We infer that the conference was not recorded and that the judge's instruction to "Read back the last question" occurred before the jury after the conference had ended.

A. (By the witness) The answer is, Your Honor, I don't remember. I sent him correspondence. I could have sent correspondence on that date.

Q. (By Mr. O'Connell) In addition, . . . did you file a motion to strike your appearance in this case?

Mr. Buchman: Objection.

The Court: Overruled.

A. Yes.

Q. Along with that, did you file a letter dated January 26th, 1975, addressed to Mr. James Daniel Beckette?

Mr. Buchman: Objection.

The Court: Overruled.

A. Yes.·

Q. I believe you just testified that Mr. Beckette has been a truthful man, is that correct?

A. Yes.

Q. Did you not in that letter —

Mr. Buchman: I object to the question he is about to ask.

The Court: Does the question —

Mr. Buchman: It refers to something —

The Court: Finish the question.

Q. Did you not on January 26th, 1975 state to Mr. Beckette —

Mr. Buchman: Again, Your Honor, I object.

Mr. O'Connell: I quote —

The Court: Wait a minute — he has raised an objection. The basis of your objection as we discussed at the Bench is privileged communication between lawyer and client?

Mr. Buchman: Yes.

The Court: I think he lost that when he testified as to his reputation in the community where he lives. Overruled. Finish the question.

Q. (By Mr. O'Connell) Did you not also state to Mr.

Beckette, 'You have given me false information on occasion.' ?

A. Yes.

Mr. O'Connell: I have no further questions.

Mr. Buchman: Your Honor, I object and move that the question and answer be stricken.

The Court: Overruled.

*Redirect Examination*

By Mr. Buchman:

Q. . . . did that refer to his relationship with his wife?

A. Yes.

Q. Nothing to do with this case?

A. No.

Q. You had asked him to be sure that he stayed away from his wife and he violated that instruction part?

A. Yes, and at that time I represented him in a domestic situation between him and his wife.

Q. And he did not follow your instructions with respect to this domestic situation?

A. No." (Emphasis supplied).

It is the witness's testimony, based upon his acquaintance with appellant which led to the witness's forming and expressing an opinion as to appellant's truthfulness, that allowed the State to cross-examine the witness for the purpose of impeachment. Recently, in *Taylor v. State,* 28 Md. App. 560, 346 A. 2d 718 (1975), *cert. granted,* February 3, 1976, and *Brown v. State,* 29 Md. App. 1, 16, 349 A. 2d 359, 368 (1975), we pointed out that the common law rule was "vastly broadened" by Courts Art. § 9-115. In *Taylor* we said:

" . . . No longer is a character witness prevented from speaking of specific acts or precluded from demonstrating a basis of knowledge leading to his own independent opinion." 28 Md. App. at 568.

This is true because Courts Art. § 9-115 modifies the common law and permits the introduction of character evidence grounded on personal knowledge, and deletes the limitation that such evidence be confined to the accused's reputation in the community.

Under the peculiar circumstances of this case, once the appellant made the tactical decision to call his former lawyer to the stand as a character witness and to have him testify on personal knowledge as to the appellant's truthfulness and veracity, he implicitly waived the client-attorney privilege relative to confidentiality that had existed between the accused and the former attorney. The confidentiality was dubious as it had already been reduced to a mere myth by the attorney's prior letter to the client, a copy of which, as we have said, was filed in the court and otherwise distributed. The State, having acquired through lawful means, the public record, the knowledge that the former lawyer was withdrawing from this case partially because of his having been furnished "false information" by the accused, was not prevented from utilizing that information to attack the witness's credibility. We think it would be an absurdity to hold that the State could not, under the circumstances, attempt to impeach testimony by the witness that the witness thought the appellant to be a truthful person and believable under oath, when the witness declined to represent appellant because, *inter alia*, appellant had furnished the witness, former counsel, with false information. We perceive no error by the trial judge in overruling the appellant's objections to the testimony. Appellant cannot have it both ways. He cannot call the former attorney as a character witness and then preclude the impeachment of the witness based on a matter that has been made part of a public record. We make clear that in this opinion we deal solely with the permissive cross-examination under the facts of this case. We are not to be construed as holding that a letter, similar to the one in the case *sub judice*, filed in a court, and otherwise publicly distributed, entitles the State to call the former lawyer as its witness for the purpose of impeaching the accused's

credibility. We do not reach that issue, and we expressly do not decide it. The case of *Harrison v. State*, 276 Md. 122, 345 A. 2d 830 (1975), relied upon heavily by appellant, is inapposite. The unusual factual posture of the instant case is readily distinguishable from *Harrison's* holding.

## II

Appellant next challenges the trial judge's advisory jury instructions. He asserts:

> "The court erred in instructing the jury that the defendant who raises the defense of alibi has the burden of going forward with evidence sufficient to generate a reasonable doubt that he was present at the crime."

The judge instructed the jury:

> " . . . [T]he defendant in this case has asserted the defense of alibi. This means that he could not have committed the offense with which he is charged because he was not at the place where the alleged crime took place at the time of its commission. *With regard to this defense, once the State has introduced evidence otherwise sufficient to place the defendant at the scene of the crime, the defendant has the burden of going forward with evidence sufficient to persuade you that a reasonable doubt exists as to whether or not he was present at the crime. If you find from the evidence that the defendant has met this burden, you must find the defendant not guilty.*" (Emphasis supplied).

Appellant's counsel took timely exception. The trial judge remarked that his instruction did not shift the burden of proof to the appellant. The judge stated, "For the record, further, so that we will understand each other, that instruction is taken from *Robinson versus State*, 20 Md. App. 450 [, 316 A. 2d 268 (1974), *cert. denied*, 272 Md. 747 (1974),] directly from that case."

As we see it the judge misconstrued *Robinson*. In *Robinson*, we said:

> "We think the sound view to be that an alibi is not an affirmative defense, placing any burden upon a defendant beyond the self-evident one of attempting to erode the State's proof to a point where it no longer convinces the fact finder beyond a reasonable doubt. Proof of an alibi, like any other defense testimony, is simply a means of controverting the State's effort to establish criminal agency." 20 Md. App. at 459.

The quoted excerpt from *Robinson* simply points out the practical effect of an alibi defense on the State's case. It is not and was never intended to be a "blueprint" for a "patented" jury instruction. In this connection, we think it well to restate what Judge Digges wrote in *State v. Grady*, 276 Md. 178, 186, 345 A. 2d 436, 440 (1975):

> " ... [W]e suggest that it is not always appropriate to quote from appellate decisions in jury instructions since the language employed in a particular opinion may not adequately inform jurors of their responsibility." (Citations omitted).

*See also Blizzard v. State*, 30 Md. App. 156, 351 A. 2d 443 (1976), wherein we stated that the underlying reasons for a jury instruction need not be communicated to that body. In addition, we discussed the difficulty that may arise when the phrases of " ... appellate opinions are 'lifted' and turned into jury instructions." 30 Md. App. at 168.

Shortly after *Robinson*, we, in *Jackson v. State*, 22 Md. App. 257, 263, 322 A. 2d 574, 577 (1974), *cert. denied*, March 5, 1975, opined:

> " ... An alibi defense ... merely requires an accused to go forward with such exculpatory evidence as he may wish to present for the trier of fact to consider in determining whether the State has met its burden [of proving the defendant guilty beyond a reasonable doubt]. The trial judges are

cautioned not to instruct that an accused has the 'burden of proof' of establishing alibi because such an instruction is wrong. Moreover, an instruction that places the 'burden' upon an accused to prove by a preponderance of the evidence his alibi, may effectively erode the only defense available to an accused, and thus, cause him to stand naked and defenseless before the State's accusation."

We further said in *Jackson* that it is for the trier of fact to determine whether the alibi evidence, " . . . considered and weighed on the same scale as all other evidence . . . creates a reasonable doubt of the defendant's guilt." 22 Md. App. at 264. Subsequently, in *Grady v. State,* 24 Md. App. 85, 329 A. 2d 726 (1974), we restated the holdings of *Robinson* and *Jackson.* The Court of Appeals, affirming our decision, said in *State v. Grady, supra:*

" . . . In sum, under the Federal Constitution, as well as the law of Maryland, the burden is on the State to prove all elements of the alleged crime and to do so beyond a reasonable doubt; hence, the defendant does not have to establish his alibi, not even by a minimal standard of proof. 'Evidence of alibi should come into a case like any other evidence and must be submitted to the jury for consideration of whether the evidence as a whole on the issue of presence proves the defendant's guilt beyond a reasonable doubt.' *Smith v. Smith,* 454 F. 2d 572, 578 (5th Cir. 1971), *cert. denied,* 409 U. S. 885 (1972)." 276 Md. at 182.

We deem it advisable to counsel trial judges against injecting into jury instructions any assertion that a defendant carries a "burden of going forward with evidence sufficient to persuade . . . [the jury] that a reasonable doubt exists as to whether or not . . . [a defendant] was present at the crime." Such an instruction, in our view, may mislead the jury into thinking that a defendant carries a burden of proving his alibi beyond a reasonable doubt. The State carries the "burden of proof," not the appellant. Referring to the going forward with evidence establishing an alibi as a

"burden" serves to confuse, not enlighten, and this should be avoided. An alibi is no different than other evidence offered by a defendant. It must be overcome by the State's proof beyond a reasonable doubt.

Because we believe a fair reading of the instruction in this case would lead the jury to believe that the appellant carried the burden of eroding the State's proof through the presentation of "evidence sufficient to persuade . . . [the jury] that a reasonable doubt exists," we conclude that the judgment must be reversed.

Having so held it is unnecessary for us to reach the third issue presented by appellant as that question may not arise anew at a retrial.

### *Indictments No. 50711 and 51183*

Appellant was, as we have already noted, also convicted by a jury in the Circuit Court for Baltimore County of rape, housebreaking and the use of a handgun in the commission of a felony.

On appeal to this Court, appellant's counsel candidly admits that he has " . . . carefully scrutinized the record of the trial proceedings, [and] . . . is unable to discover any reversible error."

Under *Anders v. California*, 386 U. S. 738, 87 S. Ct. 1396, 18 L.Ed.2d 493 (1967), and *Tippett v. Director*, 2 Md. App. 465, 235 A. 2d 314 (1967), whenever an appeal is presented to us in such a posture, we are required to examine fully the record of the proceeding. We have, in the instant case, reviewed the suppression hearing, the *voir dire*, the transcript of the trial, including evidentiary rulings, as well as the trial judge's jury instructions. We have searched the record in its entirety in order to find anything that is "arguable on the merits" and we discover no such issue. This appeal is, as counsel noted, wholly frivolous.

> *Judgment on Indictment No. 49907 reversed.*
>
> *Case remanded for a new trial.*
>
> *Judgments on Indictments 50711 and 51183 affirmed.*