## STEVEN LEE NISHCHUK v. STATE OF MARYLAND

[No. 1099, September Term, 1975.]

*Decided July 27, 1976.*

The cause was argued before POWERS and MENCHINE, JJ., and RICHARD M. POLLITT, Associate Judge of the First Judicial Circuit, specially assigned.

*Gary Maslan, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *George E. Burns, Jr., Assistant Public Defender,* on the brief, for appellant.

*Leroy Handwerger, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *William Monfried, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Steven Lee Nishchuk (appellant) was convicted by a jury in the Criminal Court of Baltimore on two counts of

storehouse breaking under indictment 1451 and on one count of unauthorized use of a motor vehicle under indictment 1454. He was sentenced to imprisonment totaling eight years.

On appeal he contends, *inter alia,* that the trial court erroneously refused to admit the testimony of a qualified witness who had been called to impeach the credibility of a State's witness.

The issue arose in the following manner:

One Allen Lee Johnson, jointly charged with one William Allen Hadel and the appellant in indictment 1451, was called as a witness by the State. Johnson, acknowledging his own participation in the offense, implicated Hadel and the appellant as his accomplices. At the conclusion of the State's case defense counsel declared: "Your Honor, the defense would call Joyce Davenport." At that point the assistant State's attorney made a preliminary motion "that this defendant proffer to this Court what Ms. Davenport would testify to and the nature of her testimony." Defense counsel initially resisted the State's motion, saying:

> "I think the State is using this forum for purposes of discovery technique, and I know of [no] precedent where the State has been permitted to discover what a defense witness would testify to prior to that witness taking the stand."

Thereafter, however, defense counsel made two separate proffers as to the proposed testimony of the witness. The first was as follows:

> "Your Honor, the defense would proffer that Ms. Davenport would testify as follows: That she has known Mr. Johnson for a period of two years; that she has lived in the community with — where Mr. Johnson resides; that she has spoken with other individuals concerning Johnson's reputation for truth and veracity; that she knows specifically herself of incidents relating to Mr. Johnson's reputation for truth and veracity."

The second was as follows:

> "Your Honor, at this time the defense would have called Joyce Davenport as their next witness, and I would like to proffer to the Court what Ms. Davenport's testimony would have consisted of. Ms. Davenport would have testified that she had known the State's witness, Mr. Allen Johnson for a period of two years. That Ms. Davenport, in fact, lives in the community where Mr. Johnson lives. Ms. Davenport knows Mr. Johnson's reputation for truth and veracity in the community, and that this reputation is that he is a known liar. That further Ms. Davenport would testify that if Mr. Johnson was testifying under oath, Ms. Davenport would not believe him. That would be the substance of her testimony."

The second proffer was the subject of the following ruling by the trial court:

> "Well, gentlemen, under the necessary prerequisite, as outlined in Braxton v. State, in 11 Md. App. [435, 274 A. 2d 647 (1971)], inasmuch as there is no evidence asserting the good character of the witness, Mr. Johnson, put into evidence, I think that the prerequisite is missing, and therefore that it is not an issue, and as such, therefore, the proffer is denied and overruled."

It long has been recognized in Maryland that a witness may be impeached by the testimony of other witnesses familiar with the former's general reputation for truth and veracity.

In *Davis v. State*, 38 Md. 15 (1873), it was said at 50: "The credit of a witness, however, may be impeached by evidence assailing his character for veracity; . . ."

In *Sloan v. Edwards*, 61 Md. 89 (1883), it was said at 103:

> "The long settled practice, both in England and in this State, though departed from to some extent in

a few of the States in this country, requires that the witness called to prove character, either good or bad, should be interrogated as to his means of knowledge of the general reputation of the person in question among his neighbors, and what that reputation is. The evidence must be confined to general reputation, and the very form of the question assumes and implies that such general reputation must be known and proved as an affirmative fact, and not as an inference from a mere absence of common repute. *Knight v. House,* 29 Md. 194, 199; *Vernon v. Tucker,* 30 Md. 456. As laid down in I Greenl. Ev. sec. 461, the witness 'must be able to state what is generally said of the person by those amongst whom he dwells, or with whom he is chiefly conversant, for it is this only that constitutes the general reputation or character.' This principle was fully adopted by this court, in the case of *Vernon v. Tucker,* just referred to; and it is supported by all the text writers upon the subject. Taylor, in his work on Evidence, sec. 1324, says, 'The regular mode of examining into the character of the person in question, is to ask the witness whether he knows his general reputation among his neighbors, — what that reputation is, — and whether, from such knowledge, he would believe him upon his oath.' "

In *Poff v. State,* 3 Md. App. 289, 239 A. 2d 121 (1968), this Court recognized the continuing viability of the legal principle stated in *Sloan v. Edwards, supra,* although we affirmed in *Poff* because the proffered testimony showed that the proposed witness ". . . did . . . not know the general reputation of the prosecuting witness for truth and veracity among his neighbors [and] the inquiry . . . had no reference to the general reputation of the witness for truth and veracity." (at p. 291 [123])

In *Taylor v. State,* 28 Md. App. 560, 346 A. 2d 718 (1975),[1]

---

1. Affirmed #158, September Term 1975, filed July 13, 1976, 278 Md. 150, 360 A. 2d 430.

we discussed impeachment of the credibility of character witnesses by cross-examination. We there pointed out that legislative action had broadened the permissible use of testimony by character witnesses, saying at 567-68 [722]:

"A character witness at common law could be cross-examined about specific or particular acts or courses of conduct of a defendant, but on direct examination he could not testify to such specific or particular acts or courses of conduct. His testimony was, in essence, limited to what he heard from others about the defendant's reputation. The common law has been modified by statute in Maryland. Courts and Judicial Proceedings Article § 9-115 provides:

'Where character evidence is otherwise relevant to the proceeding, no person offered as a character witness who has an adequate basis for forming an opinion as to another person's character shall hereafter be excluded from giving evidence based on personal opinion to prove character, either in person or by deposition, in any suit, action or proceeding, civil or criminal, in any court or before any judge, or jury of the State.' [5]

---

"[5]. Originally enacted by Laws of Maryland 1971, ch. 760, and codified as Md. Ann. Code art. 35, § 13C. Upon the adoption at the 1st Special Sess. 1973 of the Courts and Judicial Proceedings Article, former Code art. 35, § 13C became § 9-115.

"As a result of the enactment of what is now Courts Art. § 9-115, Maryland possesses the common law rule with a vastly broadened field of vision. No longer is a character witness prevented from speaking of specific acts or precluded from demonstrating a basis of knowledge leading to his own independent opinion. To an extent, this State has eliminated some of the underlying hearsay

present in the common law rule relative to character witness testimony.[6] ”

“6. The rule at common law did not allow a character witness to testify about specific acts or courses of conduct of a defendant, nor was the witness permitted to express his own independent opinion even though it was based on acquaintance, observation, or actual knowledge. Rather the witness was required to discount what he knew and credit what he had heard from others not withstanding that the witness may or may not be more qualified to make a judgment than those upon whom he had to rely. Michelson v. United States, *supra*.” [335 U. S. 469]

Compare: *Brown v. State*, 29 Md. App. 1, 16, 349 A. 2d 359, 368 (1975).

In the subject case the proffered testimony of the witness Davenport fully meets the essential requisites for the admissibility of impeachment evidence. In such circumstances we hold that the trial court's rejection of testimony by the proffered witness was erroneous.

The trial court's reliance upon *Braxton, supra,* was misplaced. *Braxton* dealt with an erroneous failure to grant “an instruction with respect to the evidence of [the accused's] good character.” (at p. 442 [651]) This Court also pointed out in *Braxton*, at 439 [649], that the issue there presented was to be “distinguished from the limited concept of character within the impeachment rule as relating only to credibility, . . .” Indeed, the State in its brief concedes that *Braxton* has no application in the subject case, but argues alternatively, (a) that requisites to admissibility of impeachment testimony had not been met (a contention we have previously rejected), or (b) that any error was harmless beyond a reasonable doubt.

Passing to the question whether the exclusion of the evidence constituted harmless error, we observe that apart from the testimony of the witness Johnson, there was no evidence of any participation by appellant in any of the charged offenses — save for police testimony that appellant had made the statement, “I did it. Prove it.” The appellant denied making such a statement.

Appellant executed a waiver of *Miranda* rights and was interrogated by a police officer for about a half hour. The

following excerpt from the record fairly represents the police testimony as to the disputed statement:

"Q Well, ... would it be fair to say that Mr. Nishchuk denied his involvement each and every time that you asked him a question; would that be fair to say?

A Denied until I laid it out for him what I knew.

Q That was to the very end, when you claim he blurted out this statement; is that correct?

\* \* \*

Q Is that correct, that was at the very end?

A Yes. That was just about at the end.

Q You claim he said, 'I did it, Prove it.' ?

A That was his words."

Appellant's version of what he said to the interrogating officer was as follows:

"Q Did you make any statements at all concerning proving a case in a Court of law?

A Yes, sir. After he was questioning me so much, I got tired of telling him that I was not involved in it. So, I told him, I said, 'Well prove it in Court.'

Q You said, 'Well, prove it in Court' ?

A Yes, I did.

Q Meaning what?

A Meaning the fact that all he was saying to me from the time he arrested me, that I was guilty, until the time that he left me.

Q You emphatically denied this?

A Yes, sir."

The officer acknowledged that he did not indicate upon his investigative report the fact that the appellant had made an inculpatory statement, nor did he "write down that statement anywhere."

In *Dorsey v. State*, 276 Md. 638, 659, 350 A. 2d 665, 678

(1976), the late Judge William J. O'Donnell, after careful analysis of Supreme Court and Maryland cases relating to harmless error in criminal cases, re-examined the Maryland position on the subject and thus stated for the Court of Appeals the test to be applied in its determination:

"We conclude that when an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of — whether erroneously admitted or excluded — may have contributed to the rendition of the guilty verdict." (Footnote omitted.)

Upon our own independent review of the entire record we are unable to say that the rejected evidence might not, if admitted, have influenced a verdict in appellant's favor. Its rejection was thus not "harmless" error.

In light of the fact that we must reverse for a new trial, we do not reach other issues suggested by appellant.

*Judgments reversed.*
*Cases remanded for a new trial.*