494 A.2d 708

**Gary Lee HOPPER**

**v.**

**STATE of Maryland.**

**No. 1361, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

July 5, 1985.

98

Mark Colvin, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County and Robert Dean, Asst. State's Atty. for Montgomery County, Rockville, on brief), for appellee.

Argued before WEANT, GARRITY and ADKINS, JJ.

GARRITY, Judge.

"The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony." [1]

In this matter we are asked to determine whether the trial judge abused his discretion in curtailing the cross-examination of a victim as to his pecuniary interest to falsify testimony in order to keep an award of $2,698.19 he had received from the Criminal Injuries Compensation Board.

Appellant Gary Lee Hopper, an admitted male prostitute, had been charged by indictment with assault with intent to murder, assault with intent to maim, and attempted robbery. His victim was Paul Mann, an admitted homosexual. Hopper was found guilty by a jury in the Circuit Court for Montgomery County of attempted robbery and sentenced to ten years imprisonment.

### Facts

Mr. Mann testified that after meeting Hopper at a bar in the District of Columbia, Hopper agreed to accompany him to his Montgomery County apartment and provide sexual services in exchange for $30.00. According to Mann, that night Hopper rendered the services promised and "was a perfect gentleman." The next morning Mann paid Hopper $30.00 and gave him a ride to a nearby art gallery. That evening, however, according to Mann, Hopper telephoned him and asked if he could spend another night at the apartment, assuring Mann that this time he would not seek compensation. The victim testified that he agreed that Hopper could "come and stay and just sleep on the couch." Mann further stated that although Hopper tried to interest him in another sexual act, he replied, "[n]o, I told you that I am not able to give you anything, and I don't feel that I want any second session with you. It does not interest me." The victim further testified, "I slept for quite a while

---

1. 3A J. Wigmore Evidence Sec. 940, p. 775 (Chadbourn rev. 1970).

I know, and the next thing I knew something crashed and someone crashed down on top of me, the full weight of the body, and put his left arm around my neck and ... cut my throat." Mann managed to roll away from his assailant's grasp and then gird himself from further attack as he seemingly froze Hopper in his tracks with the reminder that mutual friends knew of Hopper's presence in the apartment. When Mann asked Hopper why he had cut him, the appellant replied that he needed money. Moments later, the victim was able to run out of the apartment, lock the door from the outside, and ask a neighbor to call the police.

Hopper testified, on the other hand, that he had spent three nights at Mr. Mann's apartment and provided sexual services each night before sleeping with Mann in the latter's bed. According to the appellant, after the third session, he awoke at about 5:30 a.m. When he awakened Mann and asked for a ride, Mann became "cranky" and an argument ensued. When Hopper demanded his money for the sexual services, Mann replied that he did not owe him anything inasmuch as the appellant had spent three nights in his apartment. Both men became "angry" and at one point in the argument, the appellant pulled out a knife and said, "[j]ust stay away from me. All I want is my money that you owe me." As the appellant turned and started to walk away, Mann grabbed him. In the ensuing tussle, both men fell to the floor and Mann was accidentally cut, according to Hopper. Hopper further testified that when he saw Mann bleeding, he told Mann that he "didn't mean to do it," and that he "wasn't trying to hurt him." He then put the knife in his gym bag and telephoned the police for help. Hopper testified that he became "scared" and left the apartment through the sliding glass doors leading from the bedroom to the balcony, and drove to his home in Orlando, Florida, where he was arrested two weeks later. The appellant reiterated that Mann had been cut accidentally, and denied any intent to kill, injure or rob him.

Mr. George Cornell, who also had had a sexual relationship with Hopper, testified that he had been a friend of Paul

Mann for fifteen years, that he had given the knife to Hopper about a week before the incident in question, and that Hopper had been polite with him.

### *Curtailment of Cross-Examination*

Prior to trial, defense counsel advised the court that Mr. Mann had filed a claim with the Criminal Injuries Compensation Board and that a single board member preliminarily had denied the claim under the "family crime" exclusion on the ground that Mr. Mann had been living with the assailant while maintaining a sexual relationship with him at the time of the occurrence.[2]  He further advised the court that Mr. Mann had been granted a reconsideration of this decision and was ultimately awarded his claim.  At trial, when defense counsel sought to cross-examine Mann about the letter of reconsideration he had written denying that he had been maintaining a sexual relationship with the appellant, the following colloquy took place:

MR. DEAN: I am going to object to any at this point—

THE COURT: What in the world does Criminal Injuries Compensation have to do with this case?

MR. COCKERILL: Your Honor, he applied.

THE COURT: He was turned down.

---

**2.**  The Criminal Injuries Compensation Act, Md.Ann.Code, art. 26A, § 5(b) provides:

> A person who is criminally responsible for the crime upon which a claim is based or an accomplice of such person or a member of the family of such persons shall not be eligible to receive an award with respect to such claim.

Section 2(d) of the Act describes "family," when used with reference to a person, as meaning:

1) any person related to such person within the third degree of consanguinity or affinity,

2) any person maintaining a sexual relationship with such person, or

3) any person residing in the same household with such person.

Section 12(e) of the Act authorizes the board, when determining the amount of the award, or in rejecting the claim altogether, to consider culpable conduct of the victim towards contributing to the infliction of his own injury.

MR. COCKERILL: He was denied benefits on the basis of the family exception that I read to you out of the statute.

. . .

MR. COCKERILL: The other reason is, of course, being denied, he lost approximately $2,700.00 in benefits.

THE COURT: So?

MR. COCKERILL: He has motivation to testify a certain way and I think it goes as to bias. If he were to testify that he had been over there and had sex more than once, he is imperiling his award.

THE COURT: He may well be, but we are not dealing with the award, we are dealing with the events of that night.

MR. COCKERILL: I think it goes to interest or bias.

THE COURT: How can that go to bias?

MR. COCKERILL: If a man came in and said—let's pick out the most blatant example, Cockerill gave me $2700.00 to testify this way, you would say that goes in—he in effect has received $2700.00 to tell the story in the way that there was no sex on the night before the incident, but he is receiving $2700.00 by telling it that way.

THE COURT: I will sustain the objection. That does not go to bias, it is purely to get in the fact that he is seeking compensation and has got compensation.

(Whereupon, the Bench Conference concluded).

BY MR. COCKERILL:

Q. Mr. Mann, on November 11, 1983, did you write a letter in which you said, "Hopper was an overnight guest in my apartment—

MR. DEAN: Objection.

MR. COCKERILL: (continuing)—and at no time did he ever have anything to do with me other than during the one night he stayed over due to father being in California for two days as he stated."?

THE WITNESS: What did I say, one night or two nights? What we talk about here is the night of the

incident, so we do not talk about the night before. It was not relevant to the situation.

I was interrogated by an investigator—

THE COURT: All right. Ask another question.

BY MR. COCKERILL:

Q. Were you told—

A. By whom?

Q. (continuing)—*were you told that you would not be entitled to receive benefits if your injury —*

MR. DEAN: Objection.

THE COURT: Sustained.

MR. DEAN: Move to strike any reference.

THE COURT: All right. The motion is granted.

MR. COCKERILL: Your Honor, I will proffer the contents of Exhibits 2 and 3.[3] (Emphasis added)

We recognize that the decision to either allow or disallow questions on cross-examination is normally left to the sound discretion of the trial judge. *Caldwell v. State,* 276 Md. 612, 618, 349 A.2d 623 (1976); *Milligan v. State,* 18 Md.App. 588, 593, 308 A.2d 418 (1973). "But where limitations imposed by the court upon cross-examination are such as plainly inhibit the ability of the accused to obtain a fair trial, the general rule is manifestly inapplicable." *DeLilly v. State,* 11 Md.App. 676, 681, 276 A.2d 417 (1971), citing *Shupe v. State,* 238 Md. 307, 208 A.2d 590 (1965).

The nub of the appellant's contention is that as a result of the trial court's ruling, he was unable to establish a record from which to argue to the jury why Mr. Mann might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. The appellant contends that

---

**3.** These exhibits show that Mann's claim, although preliminarily denied, was ultimately granted. Mr. Mann was awarded $2,698.19 by the Criminal Injuries Compensation Board pursuant to Md.Ann.Code, art. 26A, § 5(a)(1) (1984 Cum.Supp.) on the basis that he "was the victim of a set up by a psychotic killer ... and that the limited sexual encounter did not cause nor contribute to the infliction of the claimant's injury."

on the basis of the limited cross-examination that was permitted as to the criminal injuries claim, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness. According to the appellant, Mann was accidentally cut when he grabbed Hopper during an argument about payment for sexual services. Moreover, the appellant argues that the trial judge's ruling actually allowed the prosecutor on rebuttal argument to state the following with impunity:

Now, Mr. Cockerill has implied, suggested, stated that the victim is lying or something. Ladies and gentlemen, just ask yourselves "Why?" Why would Paul Mann lie? There is no reason for Paul Mann to tell lies. There would be no benefit whatsoever accruing to Paul Mann to lie.

■ It is well settled that the right of confrontation guaranteed by the Sixth Amendment to the federal constitution and Article 21 of the Maryland Declaration of Rights includes the right to cross-examine about matters which affect a witness' bias, interest, or motive to falsify. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *State v. Cox,* 298 Md. 173, 468 A.2d 319 (1983); *Fletcher v. State,* 50 Md.App. 349, 437 A.2d 901 (1981); *State v. DeLawder,* 28 Md.App. 212, 344 A.2d 446 (1975); *Rowe v. State,* 62 Md.App. 486, 490 A.2d 278 (1985); and *Waldron v. State,* 62 Md.App. 686, 491 A.2d 595 (No. 853, September Term, 1984, filed May 8, 1985).

In *Davis v. Alaska, supra,* the Supreme Court stated:

A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. Wigmore Evidence Sec.

940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400 [1413], 3 L.Ed 2d 1377 (1959). 415 U.S. at 316–17, 94 S.Ct. at 1110. (Footnote omitted).

Similarly, this Court concluded in *DeLawder:*

Defense counsel did his best to show the existence of possible bias, prejudice or ulterior motive of the prosecutrix, causing her to assert that DeLawder carnally knew her. We cannot speculate, more than the Court could in *Davis*, as to whether the jury, as the sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to present it fully. But we do conclude, as the Court concluded in *Davis*, that the jurors were entitled to have the benefit of the defense theory before them so they could make an informed judgment as to the weight to place on the prosecutrix's testimony which provided "a crucial link in the proof ... of [the accused's] act." (Citation omitted). 28 Md.App. at 226, 344 A.2d 446.

█ In the case *sub judice*, Hopper testified that he had provided sexual services to Mann on three consecutive nights, that he accidentally cut Mann during an argument arising from Mann's refusal to pay him, and that he did not intend to injure or rob Mann. Defense counsel sought to establish through cross-examination of Mann that Mann had filed a claim with the Criminal Injuries Compensation Board seeking an award for medical and related expenses; that his claim was initially denied on the ground that he had been living and maintaining a sexual relationship with the appellant; and that he had sought reconsideration. Counsel further sought to establish that in order to receive an award, Mann had to convince the fact finder that he neither had been maintaining a sexual relationship with the appellant, nor had he been in any way responsible for the crime or contributed to the infliction of his own injury.

We believe that such evidence was germane to the issue of bias or pecuniary interest, and that the trial judge erred in curtailing cross-examination as to the relevant issue regarding the witness' possible motivation to fabricate his testimony. Furthermore, although the jury may very well have believed the victim despite the proffered motivation to fabricate in order to keep the award, that possibility is in the nature of mere speculation. In any event, as credibility had become a crucial issue, the inquiry had substantial probative force.

In our determination as to whether the error was harmless, we are guided by the Court of Appeals holding in *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665 (1976). In order to find that an error is harmless, we must "be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict."

Based upon our independent review of the record wherein the issue of credibility was particularly acute, especially so in light of the prosecutor's argument on rebuttal, we cannot declare a belief, beyond a reasonable doubt, that the error in curtailing the inquiry as to the victim's pecunious motivation to falsify testimony, in no way influenced the verdict.

As we believe that the proffered focus of cross-examination which had been excluded could have cast sufficient doubt on the victim's credibility to render him unworthy of belief in the mind of at least one juror, we deem the error to be prejudicial. *See Cox v. State*, 51 Md.App. 271, 284, 443 A.2d 607 *aff'd, State v. Cox*, 298 Md. at 185, 468 A.2d 319. As the evidence was sufficient to convict the appellant of attempted robbery, however, we shall remand for a new trial.

## II. *Sufficiency of Indictment*

In the interest of judicial economy, we shall also resolve the second issue presented to us by the appellant.

■ Count Three of the indictment charged the appellant with what turned out to be the sole surviving charge, attempted robbery. It alleged, in pertinent part, that Hopper "unlawfully did attempt to commit a robbery upon Paul Mann ...". As the indictment failed to state that Hopper attempted to take or carry away the property, that he did so by the use of violence, or that he intended to permanently deprive Mr. Mann of his property, the appellant contends that the charging document was fatally defective.

The Court of Appeals recently resolved the question in *Williams v. State,* 302 Md. 787, 490 A.2d 1277 (1985). The Court held that "[a]lthough the customary method of identifying the particular crime charged has been to aver its essential elements in the charging document, that is not the exclusive method, and the use of other words that sufficiently characterize the crime will satisfy jurisdictional requirements. *See Putnam v. State, supra,* 234 Md. [537] at 541, 544–45 [200 A.2d 59 (1964)]." We hold that the charging document was sufficient.

JUDGMENT REVERSED.

CASE REMANDED FOR NEW TRIAL.

COSTS TO BE PAID BY MONTGOMERY COUNTY.