543 A.2d 879

**Eric Dwayne HEMINGWAY**

v.

**STATE of Maryland.**

**No. 1584, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

July 12, 1988.

Steven G. Chappelle (Joseph F. Vallario, Jr. on the brief), Suitland, for appellant.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty., Baltimore, Alexander Williams, Jr., State's Atty. for Prince George's County and Martin J. Shuham, Asst. State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before GARRITY, BLOOM and KARWACKI, JJ.

KARWACKI, Judge.

In the course of a confrontation between the occupants of two vehicles at a Mobil gas station in Prince George's County, Eric Dwayne Hemingway, the appellant, shot and

killed Randall Hickman. A jury in the Circuit Court for Prince George's County convicted appellant of manslaughter, use of a handgun in the commission of a felony, and transporting a handgun in a vehicle traveling upon a public highway. He was acquitted of first and second degree murder. Judge David G. Ross sentenced appellant to concurrent ten year, eight year, and one year terms of imprisonment.

In this appeal from those judgments, appellant asserts that the trial court erred when it prohibited a character witness called by him from testifying to the bases for the witness's opinion that Randall Hickman was a violent person. Appellant also contends that the court erred by refusing to give two proposed jury instructions and by preventing defense counsel from reading to the jury in his closing argument a portion of an opinion of the Court of Appeals from which appellant derived one of his proposed jury instructions which the court had rejected. Finally, appellant alleges that the court abused its discretion by restricting his cross-examination of two witnesses.

On May 28, 1986, a Trans Am driven by Randall Hickman stopped at a Mobil station on Indian Head Highway. Hickman's brother, Steve, and a friend, Randy Mullins, were passengers in the vehicle. The three had been drinking beer earlier that evening.

Two young women, Mary Louise Johnson and Susie Murphy, were sitting in a parked vehicle at the Mobil station with their friend, Anthony Vernon, when Hickman's Trans Am arrived. The three had planned to meet appellant there for an evening out. As the Trans Am drove through, one of the young women shouted, "nice car." In response, Randall Hickman backed his vehicle alongside the other car to initiate a conversation with the two women. Within minutes, appellant arrived in a red Chevrolet Blazer. Emboldened by the arrival of his friend, Vernon left his vehicle, walked around to the passenger side of Hickman's Trans Am, and exchanged some hostile words with its occupants.

He then joined appellant in his parked Blazer to recount what had transpired before appellant's arrival.

The events which followed were the subject of conflicting accounts at trial. Steve Hickman and Randy Mullins testified that, after Vernon entered appellant's Blazer, Randall Hickman backed the Trans Am to where the Blazer was parked. In their version of events, all three occupants then exited the Trans Am, but Randall Hickman was able to take just one step before appellant leapt from his vehicle, ran toward Hickman, and shot him at close range. Steve Hickman and Mullins also testified that neither they nor Randall Hickman possessed any weapons or made any threatening gestures before appellant discharged his handgun.

According to appellant and Anthony Vernon, the occupants of the Trans Am shouted violent threats at them as the Trans Am backed toward appellant's vehicle. In this second account, the occupants of the Trans Am jumped out of their vehicle and approached appellant and Vernon. Appellant testified that, fearing an imminent attack, he placed a pistol in his back pocket and stepped out of his vehicle, but before he could close the car door, Hickman charged, throwing a kick. He concluded that, although he originally brandished his gun with an intent to fire it into the air, he instead panicked and shot Hickman. Appellant conceded that he did not see the Hickmans or Mullins in possession of any weapons. All three of the Trans Am's occupants were unknown to appellant.

### Character Evidence

█ Appellant called Phillip N. Lantz, a retired West Virginia State Policeman, to testify as to the reputation for violence of the victim, Randall Hickman. Prior to Officer Lantz's testimony, the court and counsel conducted an examination of Officer Lantz out of the presence of the jury to determine the basis of his knowledge of the victim's character. The State had previously filed a motion *in limine* to prevent Lantz from mentioning any specific acts

of violence by Randall Hickman in the course of his testimony.

At that *in camera* hearing, Lantz informed the court that he had retired in March of 1987 after 19½ years service as a West Virginia State Policeman. From December 1977 until his retirement, he was one of four law enforcement officers in Calhoun County, West Virginia, which had a population of approximately 5,000 persons. Lantz further testified that he was well acquainted with Randall Hickman, who resided in Calhoun County.

In Lantz's opinion Hickman was a very violent person. He based that opinion on his investigation of two crimes. The first resulted in Hickman's conviction on May 2, 1979 of voluntary manslaughter of one Edward Carr on November 17, 1978. The certified record of that conviction by the Circuit Court for Calhoun County reflected that Hickman had shot Carr in a barroom fracas. The second crime was the malicious wounding of one Rue Powell that occurred on June 5, 1981. An unexecuted warrant charging Hickman with that offense had been issued on June 11, 1981. The certified copy of the record of the court which issued that warrant revealed allegations that Hickman had severely beaten Powell about the head with the butt of a shotgun.

The court ruled that Lantz could not mention before the jury either act of violence committed by Hickman as a basis for his opinion as to Hickman's violent character. Also, the court sustained an objection to the admission of the certified copies of the court records pertaining to Hickman's voluntary manslaughter conviction and to the outstanding warrant for Hickman's arrest on the charge of malicious wounding. Officer Lantz was therefore limited to testifying that he was acquainted with Randall Hickman and that Hickman was, in his opinion, a violent person. Appellant asserts that the court erred in prohibiting Lantz from testifying to his bases for that opinion.

In *Thomas v. State*, 301 Md. 294, 306–07, 483 A.2d 6 (1984), the Court of Appeals explained that evidence of the

character of the victim is admissible for two purposes where the issue of self-defense has been properly raised in a homicide prosecution.

First, it may be introduced to prove the defendant's state of mind when the victim was killed. Specifically, the character evidence may be used to prove that defendant had reasonable grounds to believe that he was in danger. *Jones v. State*, 182 Md. 653, 659, 35 A.2d 916 (1944). The accused may introduce evidence of the deceased's previous violent acts to prove that he had reason to perceive a deadly motive and purpose in the overt acts of the victim. To use character evidence in this way, the defendant first must prove: (1) his knowledge of the victim's prior acts of violence; and (2) an overt act demonstrating the victim's deadly intent toward the defendant. *Gunther v. State,* 228 Md. 404, 410, 179 A.2d 880 (1962); *Jones v. State, supra,* 182 Md. at 659–60, 35 A.2d 916. Second, the violent character of the victim may be introduced to corroborate evidence that the victim was the initial aggressor. *Williamson v. State,* 25 Md.App. 338, 333 A.2d 653 (1975). It is not necessary to prove that the defendant had knowledge of the victim's reputation. *Id.* 25 Md.App. at 345, 333 A.2d 653. To use character evidence for this second purpose, however, the proponent must first establish an evidentiary foundation tending to prove that the defendant acted in self-defense. *Id.* 25 Md.App. at 345, 333 A.2d 653; 1 *Jones on Evidence* § 4:40 at 463–64 (1972); 1 *Wharton's Criminal Evidence,* § 236 at 510–11; 40 Am.Jur.2d *Homicide* § 303 (1968). *See Nixon v. State,* 204 Md. 475, 484, 105 A.2d 243 (1954) (evidence concerning the "quarrelsome disposition" of the victim is properly excluded unless a proper foundation is laid).

Because appellant did not know Randall Hickman prior to the confrontation which resulted in Hickman's death and was not familiar with his violent history, Lantz's opinion of the victim's character was admissible for the sole purpose of corroborating appellant's and Anthony Vernon's testimony that Hickman was the initial aggressor. The admissibili-

ty of this opinion evidence is governed by Md.Code (1984 Repl.Vol.), § 9–115 of the Courts & Judicial Proceedings Article which provides:

> Where character evidence is otherwise relevant to the proceeding, no person offered as a character witness who has an adequate basis for forming an opinion as to another person's character shall hereafter be excluded from giving evidence based on personal opinion to prove character, either in person or by deposition, in any suit, action or proceeding, civil or criminal, in any court or before any judge, or jury of the State.

This statute, enacted by ch. 760 of the Acts of 1971, made a drastic change in the law of this State governing the use of relevant opinion evidence as to the character of a person in the trial of both criminal and civil cases. *Kelley v. State*, 288 Md. 298, 302, 418 A.2d 217 (1980); *Durkin v. State*, 284 Md. 445, 448–49, 397 A.2d 600 (1979); *Taylor v. State*, 278 Md. 150, 155, 360 A.2d 430 (1976), *aff'ing* 28 Md.App. 560, 567–68, 346 A.2d 718 (1975). Prior thereto, a character witness was limited to offering an opinion as to another's reputation in the community for possessing a relevant character trait. Such witness was not permitted to venture his personal opinion as to whether another possessed that character trait nor was the witness allowed to testify to specific instances where the person exhibited that character trait or the lack thereof. *Taylor v. State, supra*, 278 Md. at 155, 360 A.2d 430 (1976); *Comi v. State*, 202 Md. 472, 478, 97 A.2d 129 *cert. denied*, 346 U.S. 898, 74 S.Ct. 223, 98 L.Ed. 399 (1953).

Under Md.Code, *supra*, § 9–115 of the Courts & Judicial Proceedings Article, the party who offers the personal opinion of a character witness must first convince the trial judge that the witness possesses an adequate basis for forming an opinion as to another person's character. *Kelley v. State, supra; Durkin v. State, supra.* The trial court's exercise of its discretion in performing this threshold function will be reversed on appeal only where there is a clear abuse of discretion. This does not mean, however,

that the basis for the character witness's opinion, if admitted, has no relevance to the weight ascribed to that opinion by the jury. Clearly, the bald conclusion of the witness without any reason to support it hardly commends the opinion for serious consideration by the trier of the fact. Thus, in discussing the impact of § 9–115 upon the common law of this State when that statute was initially reviewed by this Court in 1975, Chief Judge Gilbert, writing for this Court in *Taylor v. State, supra,* 28 Md.App. at 567–68, 360 A.2d 430, observed:

> A character witness at common law could be cross-examined about specific or particular acts or courses of conduct of a defendant, but on direct examination he could not testify to such specific or particular acts or courses of conduct. His testimony was, in essence, limited to what he heard from others about the defendant's reputation.
>
> . . . . .
>
> As a result of the enactment of what is now Courts Art. § 9–115, Maryland possesses the common law rule with a vastly broadened field of vision. No longer is a character witness prevented from speaking of specific acts or precluded from demonstrating a basis of knowledge leading to his own independent opinion. To an extent, this State has eliminated some of the underlying hearsay present in the common law rule relative to character witness testimony.

We have continued this view of the "vastly broadened field of vision" appended to the common law rule by § 9–115. *Cox v. State,* 51 Md.App. 271, 275, 443 A.2d 607 (1982), *aff'd* 298 Md. 173, 468 A.2d 319 (1983); *Nishchuk v. State,* 32 Md.App. 403, 406–08, 362 A.2d 91 (1976); *Beckette v. State,* 31 Md.App. 85, 93, 355 A.2d 515 (1976); *Brown v. State,* 29 Md.App. 1, 15–16, 349 A.2d 359 (1975). Although the Court of Appeals has not been presented with the issue we resolve in the case *sub judice,* we note Judge Eldridge's comment in his opinion for the Court of Appeals in *Durkin v. State, supra,* 284 Md. at 453, 397 A.2d 600:

In sum, it is clear from the language and legislative history of § 9–115 that the extent of the basis for the personal opinion character testimony relates to admissibility, *and not just to the weight to be given the testimony by the trier of fact.* (Emphasis supplied.)

*See also* 1A Wigmore, *Evidence* § 63.1 (Tiller's rev. 1983).

The State argued below and in this Court that *Williamson v. State*, 25 Md.App. 338, 333 A.2d 653 (1975) supports the limitation that the trial court placed upon Officer Lantz's testimony. We disagree. It is apparent from the opinion in that case that the effect of Md.Code, *supra*, § 9–115 of the Courts and Judicial Proceedings Article upon the law relating to a character witness's testimony as to reputation of another was never considered by this Court.

We hold that the trial court abused its discretion in restricting Officer Lantz's character witness testimony to the recital of the length of time he had known Randall Hickman and his bald conclusion as to Hickman's reputation for violence. In so ruling, the court deprived the appellant of an ability to urge the jury to credit Lantz's opinion because of the substantial basis for it. Since we cannot say, upon our own independent review of the record, that the rejected evidence might not have influenced the jury's verdict, we hold that the error was not harmless beyond a reasonable doubt. *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665 (1976). Consequently, we shall reverse the convictions of manslaughter and use of a handgun in connection therewith and the sentences imposed on each of those convictions. Since the error which requires the reversal of these judgments did not affect appellant's conviction and sentence for transporting a handgun, we shall affirm that judgment.

■ The appellant may be retried on the charges of manslaughter and use of a handgun in connection therewith. At the retrial, Officer Lantz should be permitted to give his opinion of Randall Hickman's violent character and the bases for his opinion. The authenticated records re-

flecting Hickman's specific violent acts in 1977 and 1981 might be admissible should the State dispute the accuracy of Lantz's recollection of Hickman's involvement in those specific acts of violence.

Since the remaining questions presented by the appellant are likely to arise at any new trial, we shall address them.

### Jury Instructions and Closing Argument

■ Appellant next contends that the trial court erred when it refused to instruct the jury as follows:

> The defendant has also introduced evidence of the violent nature of the deceased. Violent character of the deceased is permitted in the testimony in order to show who was the initial aggressor, and you should consider this evidence with all the other evidence in the case and determine the guilt or innocence of the defendant.

Under Rule 4–325, a court is required to give a requested instruction which correctly states the applicable law, but it need not grant a requested instruction if the matter is fairly covered by instructions actually given. *Lansdowne v. State,* 287 Md. 232, 239, 412 A.2d 88 (1980); *Cardin v. State,* 73 Md.App. 200, 219, 533 A.2d 928 (1987), *cert. denied,* 312 Md. 126, 538 A.2d 777 (1988). In the case *sub judice,* the court instructed the jury on the elements required for the successful assertion of a claim of self-defense. Moreover, the court instructed the jury that they should not give greater weight to an item of evidence merely because it was direct rather than circumstantial. Finally, the court instructed the jury that:

> In evaluating the evidence, you should consider it in light of your own experiences. You may draw any reasonable inferences or conclusions from the evidence that you believe to be justified by common sense and your own experiences.

We think that the appellant's requested instruction, which merely apprised the jurors that they could infer circumstantially from the deceased's violent character that he was the

initial aggressor, was adequately covered by the instructions actually given.

■ Appellant also maintains that the trial court erred by refusing to propound an instruction which appellant derived from the opinion of the Court of Appeals in *Gunther v. State*, 228 Md. 404, 179 A.2d 880 (1962). The precise instruction that appellant proposed reads:

> One not seeking a fight but reasonably apprehensive he might be attacked has a right to arm himself in anticipation of an assault.

Moreover, appellant argues that the court erred when it precluded defense counsel from reading to the jury in his closing argument the proposition of law as it is actually stated in *Gunther v. State, supra*, at p. 409, 179 A.2d 880:

> One who is not in any sense seeking an encounter, but has reason to fear an unlawful attack upon his life, does not forfeit his privilege of self-defense merely by arming himself in advance.

The treatise from which the Court of Appeals quoted the above principle of law goes on to state:

> But one who has reason to expect an encounter into which he will enter as willingly as his adversary, and who secretly arms himself in order to have an unfair advantage over the other during their mutual combat, has given the matter entirely too much thought to be entitled to the rule of mitigation recognized in certain cases of killing in a *sudden* heat of passion.

Perkins, *Criminal Law*, (2d Ed.1969) at p. 58. In appellant's version of his encounter with Randall Hickman, appellant willingly left his vehicle to meet the three unarmed individuals who were approaching. Moreover, appellant secretly armed himself before the anticipated encounter. Because no facts were adduced to support the requested theory of law, the court properly refused the requested instruction. *Scott v. State*, 64 Md.App. 311, 322, 494 A.2d 992 *cert. denied*, 304 Md. 300, 498 A.2d 1186 (1985). Likewise, because the facts did not support the application of

the requested principle, no genuine dispute with a sound basis existed as to the proper interpretation of the law of the crime. *Montgomery v. State,* 292 Md. 84, 87–89, 437 A.2d 654 (1981). Therefore, counsel's argument of the law to the jury would have been improper. *White v. State,* 66 Md.App. 100, 118, 502 A.2d 1084 (1986), and the court correctly ruled that appellant's counsel could not read the above quoted excerpt from *Gunther v. State* to the jury in his closing argument.

### Cross-examination

 Appellant's final complaint is that the trial court improperly restricted his cross-examination of Steve Hickman and Randy Mullins.

Steve Hickman testified that his brother worked as a maintenance supervisor at the Strawbridge Apartments at the time of his death. On cross-examination, defense counsel asked Hickman, "[w]hat did your brother do before he started working at Strawbridge Apartments?" The court sustained the State's objection to appellant's question, but appellant made no proffer as to the relevance of his inquiry.

Control over the scope of cross-examination has traditionally been left to the discretion of the trial court and will not be disturbed by this Court unless there is a prejudicial abuse of discretion. *Commission on Medical Discipline v. Stillman,* 291 Md. 390, 422, 435 A.2d 747 (1981); *Fleming v. Prince George's County,* 277 Md. 655, 678, 358 A.2d 892 (1976). In the absence of a proffer as to the relevancy of appellant's question, we cannot say that the court abused its discretion when it sustained the State's objection to this question. *Mack v. State,* 300 Md. 583, 603, 479 A.2d 1344 (1984).

In a bench conference which took place during the cross-examination of Randy Mullins, appellant informed the court that his next question to Mullins would concern where Mullins first met Randall Hickman. By this question, appellant sought to elicit the fact that Mullins met Hickman while both were incarcerated. The court sustained the

State's objection to appellant's proposed inquiry. Appellant asserts that the court's ruling deprived him of his right to confront a witness in order to demonstrate bias on the part of the witness.

In *Brown v. State,* 74 Md.App. 414, 418–19, 538 A.2d 317 (1988), we recently examined the contours of the right of confrontation of witnesses.

> The Sixth Amendment right of confrontation guaranteed to a state criminal defendant by the Fourteenth Amendment includes the right to cross-examine about matters which affect a witness' bias, interest, or motive to falsify. *Delaware v. Van Arsdall,* 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986); *Davis v. Alaska,* 415 U.S. 308, 316–17, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 354 (1974); *Hopper v. State,* 64 Md.App. 97, 104, 494 A.2d 708 (1985); *Robinson v. State,* 47 Md.App. 558, 573, 425 A.2d 211 (1981); *Hoover v. State of Maryland,* 714 F.2d 301, 305 (4th Cir.1983). This statement is equally true of the right of confrontation guaranteed by Article 21 of the Maryland Declaration of Rights. *Hopper v. State, supra,* 64 Md.App. at 104, 494 A.2d 708. Nevertheless, the Confrontation Clause does not extinguish the wide latitude that a trial judge retains to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall, supra,* 475 U.S. at 679, 106 S.Ct. at 1435, 89 L.Ed.2d at 683; *Lewis v. State,* 71 Md.App. 402, 410, 526 A.2d 66 (1987); *Fletcher v. State,* 50 Md.App. 349, 356–57, 437 A.2d 901 (1981).

The testimony at trial amply demonstrated that Mullins was a friend of the victim; indeed, Mullins was a participant in the encounter that culminated in the appellant's infliction of the fatal wound upon the victim. The mere fact that Mullins first met the victim while the two were incarcerated does not even remotely demonstrate an additional source of his possible bias against appellant. The court did not abuse

its discretion by sustaining the State's objection to appellant's irrelevant inquiry.

JUDGMENTS ON CONVICTIONS OF MANSLAUGHTER AND USE OF A HANDGUN IN THE COMMISSION OF A FELONY REVERSED AND THOSE COUNTS REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR A NEW TRIAL;

JUDGMENT ON CONVICTION OF TRANSPORTING A HANDGUN AFFIRMED;

COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.