571 A.2d 249

**Anthony COLEMAN and Gregory Harris Givens**

v.

**STATE of Maryland.**

**No. 955, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

March 28, 1990.

Bradford C. Peabody, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellants.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Argued before GARRITY, BLOOM and KARWACKI, JJ.

KARWACKI, Judge.

A jury in the Circuit Court for Baltimore City convicted the appellants, Anthony Coleman and Gregory Harris Givens, of first degree murder and conspiracy to commit murder. After sentence was imposed upon them, they filed this appeal. They contend that the trial court committed reversible error in two instances: by granting a protective order allowing the State to withhold from defense counsel the names of its two civilian witnesses until two weeks before

trial and then prohibiting defense counsel from revealing these names to appellants until trial; and, by not allowing defense counsel to cross-examine a State's witness, who had entered a plea agreement with the State in exchange for his testimony, as to whether he was aware that he potentially faced a sentence of life imprisonment without possibility of parole on the charges to which he pleaded. We perceive no error and shall affirm.

Prior to trial, appellants requested discovery pursuant to Rule 4–263(b)(1) *inter alia* of "the names and addresses of each person whom the State intends to call as a witness at a hearing or trial to prove its case in chief." The State provided appellants with a list of all its witnesses, except for two, and moved for a protective order "allowing the State of Maryland to withhold the names and addresses of witnesses" because "[d]isclosure of witnesses's names and addresses would place the health and safety of those witnesses in jeopardy," and "would discourage witnesses' attendance at trial." At the hearing on that motion the State presented the testimony of Detective Scott Keller of the Baltimore City Police Department. Detective Keller testified that he was assigned to the homicide unit and that he had investigated the murder of which appellants were accused. He stated that appellants were members of a drug organization and that the murder victim, Delroy McNeil, was killed because he knew where "particular drug dealers put their stashes and then he would go steal the stash of drugs and sell it for his own profit." According to Detective Keller, the murder occurred after appellant Coleman, who is one of the leaders of this drug organization, gave appellant Givens a gun and instructed him to kill McNeil. Detective Keller also testified that Givens was under indictment for another drug related murder as well. Detective Keller stated that during his investigation he had spoken with the two State's witnesses who were the subject of the requested protective order. One of them overheard an incriminating conversation between appellants shortly before the murder and the other had actually witnessed the

murder. He said both had expressed reservations about testifying in court. He explained:

> The reservations are quite obvious. The biggest concern they had when I interviewed them was their personal safety. They are in extreme fear. They feel that if their identity is revealed that they would have to have 24 hour guard around the clock, but they feel like their life would not be worth a nickel. That's their words. [It is] extremely difficult to get people to come forward like this in these particular cases and to give this kind of information and even more difficult, when you do get the information, for people ... want to remain anonymous and not testify in court.
>
> [It is] very unusual for a person to put themselves this up front, so to speak, and be willing to go before the Baltimore City Grand Jury and come into a courtroom in front of whoever chooses to come in here and testify against an individual like this, an individual who is already indicted on two murders.

The court (Arabian, J.) granted the State's motion and issued a protective order pursuant to Rule 4–263(i) that allowed the State to withhold the names of civilian witnesses from defense counsel until two weeks before the day of trial but ordered the State to provide defense counsel at that time with a copy of any existing statements, grand jury testimony or criminal records of the witnesses as well as an opportunity to interview them. The order further prevented defense counsel from revealing the names of the civilian witnesses to anyone, including appellants, prior to trial.

At the beginning of trial defense counsel moved to dismiss the case, arguing that the protective order had denied appellants' rights to "due process and fundamental fairness" and the "right of confrontation" because their inability to reveal the identity of the State's witnesses to appellants prevented them from discussing with their clients any possible motive or bias on the part of those witnesses. The

motion was denied, but the court (Brown, J.) said it would make the following arrangement in light of these concerns:

[A]fter the witnesses have testified, if counsel for the defendants, as officers of the court, find that there is a need for a day or two to track down additional witnesses, or to do further investigation to determine any possible motive or bias on behalf of these witnesses, the State's witnesses, then I will certainly permit that under the circumstances of this case.

 Appellants now assert that the court's ruling violated their constitutional rights to confrontation, assistance of counsel and due process. This argument is inapposite. Discovery is designed to assist a defendant in preparing his defense and to protect him from surprise. *Mayson v. State*, 238 Md. 283, 287, 208 A.2d 599 (1965). There is, however, no constitutional right to discovery of the names of prosecuting witnesses. *DeLuca v. State*, 78 Md.App. 395, 404–05, 553 A.2d 730 (1989). The source of any right to discovery of such information is found in Rule 4–263(b)(1). Subsection (c)(3) of Rule 4–263, however, clearly permits the court to withhold discovery of information which "would entail a substantial risk of harm to any person outweighing the interest in disclosure." [1] Furthermore, Rule 4–263(i) permits the court in the exercise of its discretion to order that any of the discovery authorized by Rule 4–263 be restricted. *Warrick v. State*, 302 Md. 162, 170 n. 4, 486 A.2d 189 (1985); *Craig v. State*, 76 Md.App. 250, 263 n. 5, 544 A.2d 784 *rev'd on other grounds*, 316 Md. 551, 560 A.2d 1120 (1988), *cert. granted*, —— U.S. ——, 110 S.Ct. 834, 107 L.Ed.2d 830 (1990).

 We hold that the court did not abuse its discretion under Rule 4–263(i) in concluding that Rule 4–263(c)(3)

---

1. Appellant argues that subsection (2) of 4–263(c), regarding "confidential informants" applies in this case. We think it is clear that the witnesses in this case are not "confidential informants" as that term is commonly used and that subsection (3) therefore applies. See *Nutter v. State*, 8 Md.App. 635, 637 n. 1, 262 A.2d 80 (1970).

justified the restriction on appellants' discovery pursuant to Rule 4–263(b)(1). The testimony of Detective Keller was sufficient to establish the existence of a substantial risk of harm to the two witnesses in question. We believe the court struck a fair balance between the State's concern for the safety of its witnesses and the rights of appellants to prepare their defense by allowing defense counsel two weeks prior to trial to interview the witnesses, by requiring the State to provide defense counsel with the statements, grand jury testimony and criminal records of the witnesses at that time and in offering counsel an opportunity after the witnesses testified to have a few days continuance of the trial for further investigation.

■ Appellants also argue that the court erred in not allowing defense counsel to ask one of the State's witnesses on cross-examination whether he knew that he was facing the possibility of a mandatory life sentence without parole pursuant to Md.Code Ann., Art. 27, § 643B(b) when he agreed to testify in this case in consideration of the State's offer of a plea bargain.[2] In sustaining the State's objection to this question, the court stated:

> I will permit you to ask with the proper foundation the offenses that he was convicted of or pled guilty to or whatever. I will also permit you to ask if he knows what the statutory sentence is for those offenses, and that's it.

■ Control over the scope of cross-examination is left to the discretion of the trial court and will not be disturbed by this Court unless there is a prejudicial abuse of that discretion. *Hemingway v. State*, 76 Md.App. 127, 139, 543 A.2d 879 (1988). While a criminal defendant's right to cross-examine about matters which affect a witness's bias, interest or motive to falsify is guaranteed by the Sixth Amendment

---

**2.** The witness had been charged with four separate burglaries and related offenses. As part of a plea agreement, he plead guilty to two of the burglary charges and received two concurrent sentences of 18 months imprisonment. The charges stemming from the other two burglaries were nolle prossed.

of the Federal Constitution and Art. 21 of the Maryland Declaration of Rights, this "does not extinguish the wide latitude that a trial judge retains to impose reasonable limits on cross examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Brown v. State*, 74 Md.App. 414, 419, 538 A.2d 317 (1988). We perceive no abuse of discretion here. Defense counsel was allowed to question the witness concerning his previous convictions and any arrangement that he had worked out with the State on the charges which were plea bargained. The witness testified that he believed that he was facing a possible sentence of 72 years for the offenses he committed. In addition, there was no evidence presented that the State had intended to request a mandatory sentence for the crime with which the witness was charged, as is required under Art. 27, § 643B. Whether or not the State could have done so or should have done so were completely collateral issues which might have confused the jury. This potential justified the court's exercise of its discretion to exclude the inquiry.

JUDGMENTS AFFIRMED;
COSTS TO BE PAID BY THE APPELLANTS.